## HODIAMONT BANK v. LIVINGSTONE
### (two cases.)

Circuit Court of Appeals, Eighth Circuit.
October 1, 1929.

Nos. 8576, 8577.

Francis R. Stout, of St. Louis, Mo. (Karl P. Spencer, of St. Louis, Mo., on the brief), for appellant.

Harry A. Frank, of St. Louis, Mo., for appellee.

Before STONE, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge. There are here in form two appeals from an order of the District Court denying review of an order of the referee in bankruptcy and confirming the order of the referee which disallowed liens claimed by appellant on certain personal property of the bankrupt, Buckingham Realty Company, by virtue of two chattel mortgages held as collateral by

appellant. One of these appeals was allowed by the District Court; the other, by this court. Inasmuch as the petition before the referee and in the court below was one seeking to have certain adverse claims and liens upon the bankrupt estate declared void, and asking for a sale of the property free and clear of such liens, it would seem to us that this was a controversy arising in bankruptcy proceedings, instead of a proceeding in bankruptcy, and, that being the case, the appeal was governed by section 24a of the Bankruptcy Act, as amended by Act May 27, 1926 (44 Stat. 664, tit. 11, § 47, U. S. C. [11 USCA § 47(a.)]), and did not require an allowance by this court. See Quinn v. Gardner, 28 F. (2d) 270 (C. C. A. 8); Advance-Rumely Thresher Co. v. Wagner, 29 F.(2d) 984 (C. C. A. 8). See, also, Thomas v. Woods, 173 F. 585, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080 (C. C. A. 8). The appeal allowed by this court is accordingly dismissed; and we take up the appeal allowed by the District Court.

The short facts are as follows:

On December 2, 1926, the bankrupt was indebted to the appellant bank in the sum of $10,000, evidenced by a note for that amount, dated December 1, 1926, payable 90 days after date, and secured by 99 shares of the stock of the bankrupt company. In February, 1927, the bank demanded additional collateral, and the bankrupt on or about February 28, 1927, pledged with the bank as additional security for the debt the following: Note of the bankrupt for $50,000, dated February 28, 1927, payable on demand to the order of C. C. Miles, secured by a chattel mortgage of the same date upon the personal property contained in the Buckingham Hotel; note of the bankrupt for $15,000, dated February 28, 1927, payable on demand to the order of C. C. Miles, secured by a chattel mortgage of the same date upon the personal property contained in the Buckingham Annex Hotel. C. C. Miles was the president of the Hodiamont Bank. The notes mentioned in the two chattel mortgages, payable to C. C. Miles, were not based on any consideration passing from him to the bankrupt. He had no personal interest in them, except as a representative of the bank. It was agreed that the mortgages so pledged should not be recorded; the reason stated being that the recording might affect the bankrupt unfavorably with the Real Estate Mortgage Trust Company, which held a mortgage upon the real estate known as the Buckingham Hotel and upon the personal property therein contained.

On March 1, 1927, the $10,000 note matured. Interest was paid on the same, and the bank treated the note as extended by said interest payment. It was afterward marked "Paid" by the bank under circumstances to be presently stated. April 22, 1927, an additional amount of $3,500 was borrowed by the bankrupt from the bank upon a demand note bearing that date. It was agreed that the collateral then held by the bank should stand also as security for this additional indebtedness. June 22, 1927, a new note was given by the bankrupt to the bank, in the sum of $13,500, payable 90 days after date, to cover the $10,000 note and the $3,500 note. The pledged property, namely, the shares of stock and the two chattel mortgages, with the accompanying notes, remained with the bank. The new $13,500 note, specified as the collateral pledged for its security "99 shares stock Buckingham Realty Co. C. M. on all furniture in the Buckingham Hotel and Buckingham Annex."

The two old notes were surrendered to the bankrupt, marked "Paid." By consent of the bankrupt, the two chattel mortgages were recorded June 29, 1927, the date of the filing of the petition in bankruptcy. Between February 28, 1927, the date of execution and delivery of the chattel mortgages, and June 29, 1927, the date of recording the same, 86 creditors extended credit to the bankrupt in the aggregate sum of $23,739.76. These claims have not been paid, and have been proved against the bankrupt estate.

The referee and the District Court both held that, inasmuch as the two chattel mortgages were withheld from record from the time they were first pledged, February 27, 1927, down to June 29, 1927, they must be treated as invalid as to those creditors who extended credit to the bankrupt between those two dates. The principal assignments of error on this appeal challenge this holding.

The question involved is to be determined by the local law. Section 2256, Rev. St. Mo. 1919, provides as follows:

"Sec. 2256. *Mortgages, etc., of personalty, invalid unless recorded.*—No mortgage or deed of trust of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee or cestui que trust, or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides, in such manner as conveyances of land are by law directed to be acknowledged or proved

and recorded, or unless the mortgage or deed of trust, or a true copy thereof, shall be filed in the office of the recorder of deeds of the county where the mortgagor or grantor executing the same resides. * * *"

The Missouri cases are numerous in which it has been held that the withholding of a chattel mortgage from record renders it invalid as to creditors who became such in the interim between the making and the recording of the mortgage. Williams v. Kirk, 68 Mo. App. 457; Keet & Rountree Dry Goods Co. v. Brown, 73 Mo. App. 245; Stewart v. Asbury, 199 Mo. App. 123, 201 S. W. 949. In the case last cited the court said (page 126 of 199 Mo. App., 201 S. W. 950):

"Section 2861, Rev. St. 1909, declares chattel mortgages to be invalid unless the mortgage is recorded or possession of the mortgaged property is taken by the mortgagee except as between the parties to the instrument. And sections 2887 and 2889, Rev. St. 1909, require, in order to be valid and binding as against creditors, that instruments evidencing conditional sales be filed of record. It has long been the law of this state that a creditor who extends his credit to his debtor at a time when there is a chattel mortgage or conditional contract creating a secret lien on property in the hands of the debtor ostensibly his cannot be defeated by the mortgagee or vendor taking possession thereof under the mortgage or conditional contract, or filing the same for record."

See, also, Thesen v. Parker (Mo. App.) 274 S. W. 853.

This court has placed the same construction upon the Missouri statute. In First National Bank v. Connett, 142 F. 33, 37, 5 L. R. A. (N. S.) 148, the court, speaking by Judge Hook, said:

"The Missouri statute provides that no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded in the county in which the mortgagor resides. The sweeping character of its provisions at once attracts attention. Under this statute it has been held that where possession is not taken an unrecorded chattel mortgage is fraudulent and void in law as to every one, excepting trespassers, parties to the instrument, and general creditors whose demands arose prior to the time it was given; nor as to such prior creditors is it valid if by proceedings in court or otherwise they have secured a lien upon the property before it is recorded. Such a mortgage is also utterly void as to simple contract creditors who extended credit after it was given and who have secured no title or lien by purchase, execution, attachment, or otherwise. As to them the subsequent recording of the instrument is of no effect; it cannot be asserted against the enforcement of their demands."

See, also, In re Bothe (C. C. A.) 173 F. 597; Standard Computing Scale Co. v. Adam (C. C. A.) 287 F. 347.

Appellant bank seeks to avoid application of the foregoing rulings to the case at bar by taking the position that the execution of the new $13,500 note on June 22, 1927, and the surrender of the two notes for $10,000 and for $3,500, constituted a novation of the contract of February 28, 1927, and that the rights of the parties must be determined as of the contract of June 22, 1927, when the new note was given and the pledged property allowed to remain with the bank. The appellant contends that under this arrangement of June 22, 1927, the chattel mortgages, having been recorded within a reasonable time thereafter, and there having been no preference because the bankrupt realty company was solvent, became and are valid liens superior to the rights of the trustee.

The term "novation" has various meanings, among others, the one apparently relied on by appellant, viz. the substitution of a new obligation in place of an old one between the same parties. It may well be doubted whether there was any real novation accomplished by the transaction of June 22, 1927. The debt remained the same in amount, $13,500. The form of the instrument was changed from two notes to one; but these instruments were mere evidences of the debt; they did not constitute the obligation. That continued as before. The cancellation of the old notes and the taking of the new simply changed the instrument upon which suit would be brought to collect the debt, in case suit became necessary.

We shall not, however, enter upon a discussion of the question whether the taking of the $13,500 note on June 22, 1927, and the marking "Paid" of the two notes for $10,000 and $3,500, and returning them to the bankrupt, constituted a novation. We consider that question of little importance in the present controversy. The vital question is: What was the status on June 22, 1927, of the chattel mortgages which on February 28, 1927, had been pledged as collateral to the $10,000 and $3,500 notes?

It must be borne in mind that those notes were not the chattel mortgage notes. The chattel mortgages had their own chattel

mortgage notes of $50,000 and $15,000, respectively. These chattel mortgages, with their accompanying notes, were pledged on February 28, 1927, as collateral security to the notes for $10,000 and $3,500. These chattel mortgages had been withheld from record since they were delivered on February 28, 1927. When the transaction of June 22, 1927, took place, and one note took the place of two, the chattel mortgages continued to be collateral security for the debt, evidenced by the $13,500 note. No agreement of the parties was necessary to that effect, if the transaction was simply an extension of the debt. 8 C. J. p. 442, § 654; 11 C. J. p. 682, § 460; Foster v. Paine, 63 Iowa, 85, 18 N. W. 699; Cobb v. Vaughan & Co., 141 Va. 100, 126 S. E. 77, 43 A. L. R. 177. But, whether an agreement was necessary to that effect or not, the status of these chattel mortgages had become fixed by the Missouri statute above quoted. That status was one of invalidity as to creditors who became such subsequent to February 28, 1927. It was as though each of the chattel mortgages had stamped across its face the words, "Invalid as to creditors of the mortgagor who became such between February 28, 1927, and the date of recording of this instrument." No act of the bank or of the bankrupt could alter that status of the chattel mortgages to the detriment of such creditors. It would make no difference whether the chattel mortgages continued to be used as collateral to the $10,000 and the $3,500 notes, or were used as collateral to a new note.

Further, the effect of the Missouri statute was to create an estoppel against the bank to assert the lien of the chattel mortgages to the detriment of such creditors. In Holt v. Albert Pick & Co. (C. C. A.) 25 F.(2d) 378, a case somewhat similar in its facts to the case at bar, the court said (page 381):

"Where there is a registration statute, and a creditor withholds from recordation a chattel mortgage, pursuant to an agreement with the mortgagor, in order to aid in giving the mortgagor a fictitious credit through possession of the property sold, and, as in this case, only seeks to record the mortgage when the mortgagor or his successor to the possession of the property in question is found to be in financial difficulties, the mortgagee has acted deliberately, and cannot be heard to assert an equitable lien against the property. The doctrine of estoppel prevents the assertion of any priority by the mortgagee as against creditors or trustees representing them."

See 37 C. J. p. 332, § 50.

Furthermore, it has been held that creditors, such as those in the case at bar, have,

in view of the Missouri statute, a vested right to have such unrecorded mortgages adjudged null and void as to them. In Thesen v. Parker, supra, the court said (274 S. W. 855):

"* * * Under section 2256 of the Statutes [Rev. St. 1919], no actionable fraud is necessary to invalidate a chattel mortgage, where possession of the property has been retained by the mortgagor, or where the chattel mortgage has not been 'acknowledged or proved and recorded,' and creditors have extended credit to the mortgagor between its execution and its recording. Neither actual notice of the existence of the chattel mortgage, acquired by the creditor subsequent to the origin of his debt, nor a failure to show injury as a result of withholding from record, nor the absence of an agreement between mortgagor or mortgagee to withhold, nor the absence of fraudulent intent, nor a subsequent recording of the chattel mortgage, will impair the vested right of the creditors to have said concealed mortgage canceled."

Our conclusion is that, when the two chattel mortgages became collateral security for the $13,500 note, the infirmity of invalidity as to certain creditors, which had theretofore attached to said chattel mortgages, continued to inhere in them.

We think the order of the trial court was correct, and it is affirmed: