E. J. L'Esperance v. Commissioner.
L'Esperance v. Commissioner
Docket No. 108814.
United States Tax Court
1943 Tax Ct. Memo LEXIS 201; 2 T.C.M. (CCH) 442; T.C.M. (RIA) 43336; July 9, 1943
*201 A. Calder Mackay, Esq., and Harry W. Moore, C.P.A., for the petitioner. Eugene Harpole, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax and penalty for the calendar years as follows: Year
Deficiency
25% Penalty
1936
$ 80.80
1937
445.46
1938
160.82
$40.20
1939
92.51
The petitioner has alleged no error with reference to the determination of the deficiency for 1936. His only allegation of error with respect to the deficiencies determined for the years 1937, 1938, and 1939 is that the respondent erroneously included in the taxable net income of the petitioner retiring allowances received by him from the Imperial Life Insurance Co. of Canada as follows: 1937
$5,000
1938
6,000
1939
6,000
Findings of Fact The petitioner is a resident of Yucaipa, California. He files his income tax returns for the years 1936, 1937, 1938, and 1939 with the collector of internal revenue for the sixth district of California. From about 1914 through 1930 the petitioner was an employee of the Imperial Life Assurance Co. of Canada, and a resident of Canada. In 1930 he *202 moved to Los Angeles, California, and was given a contract by the above-named Assurance Co. as branch manager of its office in Los Angeles. Under this contract he was to receive a salary of $300 per month plus certain commissions upon business written by him or by subagents and was to receive a commission upon the renewal premiums paid upon such contracts. Other provisions of the contract were that after he had served the company as branch manager for a period of 20 years and was 60 years of age, or over, he could retire with a pension. The contract further provided: 25. Either party hereto may terminate this agreement by giving to the other party sixty days' notice in writing to that effect, but such termination shall not in any way release the Branch Manager from any indebtedness due by him to the Company and in connection with which and until same shall have been liquidated, the obligations and covenants of the Branch Manager herein shall remain in full force and virtue. Late in 1936, or early in 1937, petitioner instituted suit for divorce. The Imperial Life Assurance Co. of Canada disapproved of divorce for its branch managers and a representative of the company went to Los *203 Angeles requesting the branch manager's resignation. A letter written to the petitioner by his employer from Toronto, Ontario, Canada, dated March 2, 1937, reads in part as follows: In your letter of February 15th, 1937 you submit your resignation as of March 1st, 1937 as Branch Manager of the Company and as Agency Counsellor for the Company. This resignation is hereby accepted and your Branch Manager's Agreement, dated the 1st December 1930, and your appointment as Agency Counsellor are hereby terminated. In accordance with your conversations with our Mr. Hunt and the correspondence that has passed between you, you release the Company from all rights arising out of the said Branch Manager's Agreement and further waive any and all claims and rights against the Company now or hereafter arising except for first year commissions on business personally secured by you prior to February 28th, 1937. The Company on its part agrees to pay you a retiring allowance at the rate of Five Hundred Dollars ($500.00) per month during your lifetime, ceasing with the payment immediately preceding your death; the first payment of $500.00 to be made on the 1st of April 1937. Pursuant to the agreement *204 reached by the parties the petitioner waived all of his rights under this contract of employment with the company in consideration of the receipt during his life of the payment of $500 a month. During 1937 he received 10 such payments, of $5,000, and during 1938 and 1939 he received total payments from the company of $6,000 in each year. The Imperial Life Assurance Co. of Canada filed information returns upon form 1099 covering the payments of $500 per month made to the petitioner from March 1, 1937. Those returns listed the payments so made to the petitioner as compensation for personal services. In his income tax returns for 1937, 1938, and 1939 the petitioner failed to include the payments as taxable income. The respondent has included them in taxable income in the determination of deficiencies. The commission upon renewal premiums which the petitioner would have received in 1937, 1938, and 1939 but for the cancellation of his branch manager's contract as of March 1, 1937, amounted to $3,058, $2,295, and $2,020, respectively. The payments of $500 per month received by the petitioner from the Imperial Life Assurance Co. of Canada from March 1, 1937, constituted taxable income *205 of the petitioner. Opinion The only question for our determination is whether the payments of $500 per month received by the petitioner beginning March 1, 1937, from the Imperial Life Assurance Co. of Canada, the petitioner's former employer, constituted taxable income of the petitioner. Confessedly, the amounts received were $5,000 in 1937, and $6,000 in each of the years 1938 and 1939. Section 22(a) of the Revenue Act of 1936, and the same section of the Internal Revenue Code, provides in part: "'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or * * * gains or profits and income derived from any source whatever." Subdivision (b) of the same section provides in part as follows: (b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this title: * * * * *
(3) Gifts. Bequests, and Devises. - The value of property acquired by gift, bequest, devise. or inheritance * * * The petitioner contends that the payments which were received by him from his former employer represented pure gratuities *206 and that they are accordingly exempt from income tax in accordance with . In that case the Supreme Court held that an amount received by Bogardus from a successor corporation to the one by whom he had formerly been employed constituted a gift. The court said: "There is entirely lacking the constraining force of any moral or legal duty as well as the incentive of anticipated benefit of any kind beyond the satisfaction which flows from the performance of a generous act." The facts in the instant case are clearly very different from those which obtained in the Bogardus case, supra. The petitioner was the Assurance Company's branch manager in Los Angeles, California. He represented the company under a contract which provided that he should receive a stated salary of $300 per month and other prerequisites, including commissions, upon the receipt of the home office of renewal premiums upon contracts obtained by the petitioner. There was no provision in the contract that it could be cancelled or abrogated in case the petitioner obtained a divorce. When the petitioner instituted suit for a divorce his resignation *207 was demanded. A new contract was entered into by the parties by which the petitioner gave up all of his rights under the contract by which he was engaged and in return therefor was to receive and did receive $500 per month beginning March 1, 1937. The evidence indicates that this was far from a gratuity paid to the petitioner by his former employer. It was an amount which the Assurance Co. was willing to pay to the petitioner to be released from its contract entered into in 1930. It cannot be doubted that renewal commissions which might have been received by the petitioner under his contract after he had resigned as branch manager would constitute taxable income of the petitioner. . The same rule must be followed where an amount was paid by the Assurance Co. each month in lieu of commissions upon renewal policies. Decision will be entered for the respondent.