## COMMISSIONER OF INTERNAL REVENUE v. OATES.
### No. 10822.

United States Court of Appeals
Seventh Circuit.
Nov. 4, 1953.

H. Brian Holland, Asst. Atty. Gen., George F. Lynch, Asst. to Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Ellis N. Slack and Helen Goodner, Sp. Assts. to Atty. Gen., Washington, D. C., for petitioner.

J. Gilmer Korner, Jr., Stanley Worth, Washington, D. C., Ray Garrett, Robert H. Kinderman, Chicago, Ill., Blair, Korner, Doyle & Appel, Washington, D. C., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for respondent.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

The Commissioner of Internal Revenue seeks to reverse the decision of the Tax Court reported in 18 T.C. 570. In view of the fact that the findings of the trial court are full and complete and are, as we believe, fully sustained by the evidence, we shall try to avoid needless reiteration.

As appears more fully in the reported decision, the amount of the compensation of a general agent of the Northwestern Life Insurance Company, such as the taxpayer, depends not only on the amount paid as initial premium on a policy but also, in a lesser degree, upon the renewal premiums collected thereon during the next succeeding nine years. The original agency contract with the company provided that upon retirement, a general agent would receive commissions on renewal premiums as they were collected by the company during the nine-year period following the date of his retirement. Under the provisions of the contract as it then read, a retiring agent received a comparatively large amount as commissions during the first year. This sum decreased to less and less each year thereafter until, at the end of the ninth

year, he received no further payments. Thus his income from renewal commissions progressively decreased as he grew older. The agents having become discontented with this unfortunate result, negotiations between them and the company were entered into in 1943 looking to a revision of the contract, culminating in March 1944, in an amendment which provided in short that commissions accruing after retirement of the agent would be paid in fixed monthly installments, irrespective of the time when the company collected them. The installments were to be paid over a period of not more than 180 months, but the agent might elect to receive them in fewer months, and was also given the option of remaining under the old contract or of accepting the new one.

This taxpayer, on April 27, 1944, accepted the amendment and elected to be bound by the Evans' Table C and to receive a monthly payment of $1000. He retired April 30, 1944. At that time there was no amount due or owing him from the company and no credit to him on the latter's books. The company began in June, 1944, to make payments to him of $1000 per month, continuing them through the years 1945 and 1946. The taxpayer included in his several income tax returns for those years the exact amounts he received.

As the accruing commissions came in, Northwestern entered them to the credit of the agent on its books but made payment not of the amounts thus accruing but of the stipulated monthly payments. Renewal commissions accrued to the credit of the taxpayer for the year 1944 in the sum of $47,174.98 and in even larger amounts for 1945 and 1946. By 1949, however, they had decreased to $26,313.77. They were collected by the company and deposited in its bank account. It made available to the taxpayer no amount in excess of $1000 per month and the latter did not receive income from Northwestern on account of commissions subsequent to his retirement in any amount in excess of those reported by him.

The Commissioner assessed a deficiency in the sum representing the excess of the accrued commissions over and above $1000 per month. The Tax Court held that the taxpayer should account only for the commissions actually received, that is, $1000 per month, holding that the issue turned on the recognition to be given the second agreement; that it was by giving recognition only to the first one that the commissioner had "any semblance of reason for his determination"; that, inasmuch as the parties had a right to make the first agreement, they had a right to make the second; that the court's only concern was whether the contract actually existed and was intended as a "real, genuine, bona fide agreement," and that the record disclosed no reason why full legal effect should not be accorded the second agreement, which the taxpayer had entered into prior to the date when any of the payments in question were to begin.

Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), provides that gross income shall include all gains of whatever kind and in whatever form "paid"; Section 42, that all items of gross income shall be included in the income for the taxable year "in which received by the taxpayer," unless other methods of accounting under Section 41 control. Section 41 permits income to be computed in accord with the method of accounting regularly employed in keeping the books of the taxpayer. Under Treasury Regulation 111, Section 29.42–1 all gains are to be included in income for "the taxable year in which they are received." The taxpayer was on a cash basis.

 The amended contract was in the nature of a novation, that is, a substitution of a new agreement or obligation for an old one which was thereby extinguished. Hodiamont Bank v. Livingstone, 8 Cir., 35 F.2d 18. To be valid of course, such a contract must be supported by a consideration. Here, the extinguishment of the original obligation was consideration for the new agreement and the new promise consideration for

the release of the old, each being consideration for the other. Consequently the rights of the parties are to be determined entirely by the new contract. Under its terms the taxpayer was to receive commissions at the periods and in the fixed amounts stipulated. He was on a cash basis. He had no right to demand or to receive anything in addition to what he had agreed to accept, namely, $1000 per month.

The case is fully controlled, we think, by the reasoning in Massachusetts Mutual Life Insurance Co. v. United States, 288 U.S. 269, 53 S.Ct. 337, 339, 77 L.Ed. 739. There a policyholder permitted dividends and interest accumulating on his policies to remain on deposit with the company at interest. After observing that the regulation purported to require the policyholder to report interest credited to him and that the commissioner therefore contended that crediting the income constituted a "constructive payment," the court said: "This regulation has, however, not been applied in any case where income has been credited to another by a taxpayer employing the cash receipts and disbursements method of accounting; and specifically it has not been invoked to require policyholders to report as income the dividends or interest credited to them in cases such as this. No tax is demanded of them until actual receipt of the money. The constructive payment theory is, we think, untenable." Similar principles are announced in Musselman Hub-Brake Co. v. Commissioner, 6 Cir., 139 F.2d 65; Keith v. Commissioner, 2 Cir., 139 F.2d 596, 154 A.L.R. 931. Various decisions of the Tax Court are in accord. Thus in L'Esperance, 2 T.C.M. 442 (1943) that court said: "* * * A new contract was entered into by the parties by which the petitioner gave up all his rights under the contract by which he was engaged and in return therefor was to receive and did receive $500 per month beginning March 1, 1937. * * It cannot be doubted that renewal commissions which might have been received by the petitioner under his con-

tract after he had resigned as branch manager would constitute taxable income of the petitioner. * * * The same rule must be followed where an amount was paid by the Assurance Co. each month in lieu of commissions upon renewal policies."

The cases cited by the Commissioner, we think, do not support the doctrine he invokes. In Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, a husband contracted with his wife that earnings which were then accruing would thereafter belong one-half to her. In Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, the taxpayer had been a general agent of an insurance company and had retired. An old contract was superseded by another, changing the installments and dates. There, however, the taxpayer assigned his right to receive the payments to another and the court held that thereby he had realized the economic benefit. In Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, the taxpayer had made an assignment of uncollected income to a third person. The court pointed out that not all economic gain is taxable; that realization of income is the taxable event rather than acquisition of the right to receive it and that realization is ordinarily not deemed to occur until the income is paid, but that the taxpayer may be said to have realized the income when he takes the last step to obtain the fruition of the economic gain. It will be observed that in each of these cases the taxpayer had effectually received the accrued income with which he was charged. In other words, by assigning it, he took dominion over it, converted it to his own use and treated it as a property right, thus realizing its full economic benefit.

This case is far removed from such decisions. Here the parties were confronted by a situation where inconvenience and resulting dissatisfaction came to the retired agents by reason of the constantly decreasing payments made by the company under the original contract. To relieve the situation, the com-

pany and the taxpayer, after full and complete negotiations, before retirement of the agent, agreed to abrogate and annul the old contract, to substitute a new one and thus to improve the unsatisfactory posture of affairs. The taxpayer did not reduce to his immediate possession or to his present enjoyment anything that might thereafter accrue to him. He made no assignment; he took no dominion over the accrued commissions other than to agree to receive them in cash installments as they matured under the contract. He did nothing to charge himself with the economic benefit to be derived from the accruing commissions but, on the contrary, let them accumulate under an agreement whereby the company was to pay the same amount every month rather than constantly decreasing amounts.

We think the Tax Court was right. Its decision is

Affirmed.