JAMES G. SUMMERS & another, executors,  *vs.*
JAMES G. SUMMERS & others.

Norfolk.    November 20, 1972. — February 27, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Devise and Legacy,* Gift of insurance commissions. *Words,* "Terminal interest."

A judge of a Probate Court rightly concluded that a clause of a will giving a son of the testator the business of a small insurance company "except 50% of any . . . terminal interests [in renewal commissions] which become payable at any time after my death in accordance with the provisions of any agent's, brokers', or other contract or contracts which I may have at the time of my death with any insurance company" gave the son 50% of the terminal interest received by the testator's estate from the business of his company, but not 50% of the testator's terminal interest in renewal commissions received by his estate under contracts of his general agency with a life insurance company, where it appeared that the terminal interest under the general agency contracts was the largest asset of the estate and passing thereof to that son would leave unfunded a marital deduction trust established by the testator, who had considerable expertise in estate planning, that a bequest of the residue disclosed the testator's

intent to treat his six children equally, and that his intent to build up the small company's business so that it would approximate in value his prosperous general agency business, which he had transferred to another son, was frustrated by the testator's sudden death, and where it was not shown that the words "terminal interest" had a specialized meaning referring only to a general agent's renewal commissions. [127-131]

PETITION for instructions filed in the Probate Court for the county of Norfolk on October 1, 1970.

The case was heard by *Podolski, J.*

*James D. St. Clair (Thomas J. Sartory* with him) for James G. Summers.

*William N. Swift (Donald G. Leka* with him) for Anne L. Summers.·

ARMSTRONG, J.    This is an appeal from a decree of the Probate Court for Norfolk County entered upon a petition for instructions filed by the executors of the estate of the late Merle G. Summers of Dedham. The sole issue, both here and in the court below, has been the extent of property specifically bequeathed to one of the testator's sons, James G. Summers, under Clause Fifth of the will.

Merle G. Summers was married twice, first to Lura Summers by whom he had four children:   M. Greeley Summers, Jr., James G. Summers, Janet S. Aaron and Harriet S. Dorman. His second marriage, in 1932, was to Anne L. Summers, by whom he had two children:   Peter Summers and Anne S. Durant.   All survived him.

Although he was a law school graduate, Merle G. Summers spent his entire working life, from the early 1920's in the business of selling insurance. By 1940 he had become a general agent for the New England Mutual Life Insurance Company (New England Mutual), and remained such until reaching mandatory retirement age on March 31, 1955. His general agency, called the Merle G. Summers Agency, located on Federal Street in Boston prospered. As of the time of his retirement, it employed forty agents or more, about thirty other employees, and wrote in excess of $20,000,000 worth of life insurance annually. In addition, Merle G. Summers ran a small pension, profit-sharing and

group insurance business, known as M. G. Summers & Co.,
at 10 Post Office Square in Boston. M. G. Summers & Co.
employed no more than six persons, frequently fewer, and
produced a net income which apparently fluctuated con-
siderably, ranging from net losses to net gains of less than
$25,000.

Under the terms of his two successive general agency
contracts with New England Mutual, Merle G. Summers
was entitled to receive commissions on renewal premiums
paid after his retirement on policies written before his
retirement. This continuing right to receive commissions
following termination of his general agency contracts was
referred to in the second of those contracts as his "terminal
interest." Under his general agency contracts as originally
written, the payment to him, after retirement, of renewal
commissions or "terminal interest" would take the form of
payments in sharply descending amounts over a period of
thirteen years. At the time of his retirement, however, he
and New England Mutual amended the general agency
contracts by adopting what was known as "the Oates
Spread Agreement."[1] This amendment was intended to
spread the renewal commission, or "terminal interest,"
income roughly evenly over a twenty-year period, in order
to reduce anticipated federal income tax liability. A provi-
sion for adjustment in monthly payments at the end of
thirteen years, when his contractual right to renewal
commissions would normally cease, permitted the roughly
even payments to come out to the same total, adjusted for
payment of interest. At the time of his death, his right to
monthly payments[2] under this amendment to his general
agency contracts was the largest single asset of his estate,
valued for federal estate tax purposes at $325,000.

Before his retirement as general agent for New England
Mutual in 1955, the testator had arranged for his oldest son,

---

[1] *Commissioner of Internal Revenue* v. *Oates,* 207 F. 2d 711 (7th Cir.).

[2] He had received only nine or ten of the 240 monthly payments called for.
Future payments due his estate, as finally determined after the thirteenth year
adjustment in 1968, totalled $556,370. The adjusted gross estate for federal
income tax purposes amounted to $474,479.91.

Greeley, who had been working as an agent in the Merle G. Summers Agency, to succeed him as general agent. His intention, not completed before his death, was to transfer his office and all of his own continuing personal business activity as a writing agent and broker to M. G. Summers & Co. His son James, who had also been working in the larger agency, was also in the process of transferring to M. G. Summers & Co. There is evidence indicating that the testator intended to build up M. G. Summers & Co. in order to pass on to his son James a substantial business opportunity, such as Greeley had already received. On Saturday and Sunday, January 28 and 29, 1956, the testator drove in to Boston to have meetings preparatory to his physically moving from Federal Street to Post Office Square, and to clean out his desk and move his personal effects. He left Boston by car late Sunday afternoon, anticipating that the next morning he would be working at M. G. Summers & Co. in Post Office Square. Before reaching home, he died.

Merle G. Summers had executed a will on November 25, 1955, eight months after retiring as general agent, and two months before his death. Clause Fifth of the will provided:

"If my son, JAMES G. SUMMERS, now of Needham, Massachusetts, survives me, I give him the business which I am conducting at 10 Post Office Square, Boston, Massachusetts, under the name and style of M. G. Summers & Co., except 50% of any first or renewal commissions and terminal interests which become payable at any time after my death in accordance with the provisions of any agent's, brokers', or other contract or contracts which I may have at the time of my death with any insurance company or with any General Agent or Manager of any insurance company. This said devise shall vest with my said son the full right to the unrestricted use of the business name, M. G. Summers & Co."

The question at issue is whether or not this bequest includes fifty percent of Merle G. Summers's "terminal interest" under his terminated general agency contracts.

The appellant James G. Summers contends that it does. He points to the inclusive language of Clause Fifth: "*any* first or renewal commissions and terminal interests which become payable at *any* time after my death in accordance with the provisions of *any* agent's, brokers', or other contract or contracts which I may have at the time of my death with *any* insurance company . . ." (emphasis supplied). He introduced evidence tending to show that in the parlance of New England Mutual the words "terminal interest" are used only in connection with the post-termination commissions due a general agent, and are not used with respect to post-termination commissions due regular agents and brokers. He introduced evidence of statements by Merle G. Summers that he intended to bring together in M. G. Summers & Co. all his insurance income, from all sources. He argues, essentially, that if there is ambiguity as to whether the bequest of the business includes the payments due under the general agency contracts, the ambiguity is resolved by the use of the words "terminal interests" in the exception in the bequest; that unless those payments were included in the bequest, "terminal interests" would not have been mentioned in the exception; and that there is no evidence upon which to base a conclusion that the words "terminal interests" can mean anything other than the commissions due a general agent after termination.

The trial judge rejected these arguments, ruling that payments received by the estate under the general agency contracts do not pass under Clause Fifth, but only "50 ℅ of the first and renewal commissions and terminal interests heretofore received or received in the future by the petitioners from the business of M. G. Summers & Co."

After reviewing the testimony, we agree with the conclusion reached by the trial judge.

Much testimony was introduced comparing the tax consequences of including and not including half of the general agency terminal payments in the Clause Fifth bequest. James G. Summers's interpretation would leave unfunded Clause Eighth, which establishes a marital

deduction trust, the size of which is to be determined by a formula, for the testator's wife Anne, the appellee here and the only party other than the appellant to participate actively in the trial of this case. The testator, who had considerable expertise in estate planning, so worded the trust that it could have the effect of minimizing federal taxes on his estate. Funding the Clause Eighth trust would in fact appear to result in reducing those taxes by more than $60,000. See *State Tax Commission* v. *Loring,* 350 Mass. 568, 571. James G. Summers, while conceding that his interpretation results in higher estate taxes, contends that this is the result of the estate's heavy indebtedness and resultant general insufficiency to fund the marital deduction trust.

James G. Summers places much emphasis on the testator's desire to have him succeed to a major business opportunity like his brother Greeley, and the proposition that M. G. Summers & Co. is not a sizeable bequest unless it includes a share of the general agency "terminal interest." Anne Summers contends that the testator's desire went unfulfilled simply because he did not live long enough to build up the M. G. Summers & Co. business as he had expected he would. She also points out that James G. Summers's construction of Clause Fifth results in a bequest to him many times larger than the testator's combined provisions for his other children—with the possible exception of Greeley, whose succession as general agent was of indeterminate value and was in any event not within the sole control of the testator.

The will itself establishes that the testator sought to treat his children equally. His method of achieving equality is set forth in Clause Ninth. It provides that the residue of his estate is to be divided into equal shares for each of his children, but with certain exceptions:

> " ... The shares so set apart shall be equal, except that (a) each share set apart for a daughter, as hereinabove specified, shall have an aggregate value which is Forty Thousand (40,000) dollars less than the value of each share so set apart for a son,

and (b) the share set apart for Merle G. [Greeley] Summers, Jr. shall have an aggregate value which is Twenty Thousand (20,000) Dollars less than the value of each share so set apart for his brothers. The foregoing exceptions are made because provision has been made for payment of insurance proceeds in the amount of Forty Thousand (40,000) Dollars to each of my daughters, while to my son MERLE G. SUMMERS, JR. was given the sole opportunity to succeed to the business of the Summers Agency."

Of all the testator's children, James G. Summers alone was singled out for another gift in the will. Had the testator intended to include in the Clause Fifth bequest fifty percent of what would for many years be his principal asset, it is improbable that he would have made no adjustment for it in Clause Ninth. The testator's intention to treat his children equally, evidenced most clearly by Clause Ninth, precludes an interpretation of Clause Fifth which would single out one of those children for a gift grossly disproportionate to the others. And although in time the value of the "terminal interest" would be reduced, the testator can be assumed to have considered that his death could occur earlier rather than later in the twenty-year period. The testator may have hoped to build up M. G. Summers & Co. into a more substantial business opportunity for the appellant, but in our view this was to be accomplished by his time and effort, not by adding in his personal assets not related to M. G. Summers & Co. The exception in the Clause Fifth bequest shows that the testator intended to reduce the gift of the M. G. Summers & Co. by subtracting half of the commissions he would earn from that business, not that he intended to add to M. G. Summers & Co. half of the commissions he had earned from another business.

The appellant's contention appears to rest heavily on two propositions, the first argued vigorously and the second left implicit: First, that "terminal interest" can only refer to a general agent's renewal commissions; and second, that at the time he executed the will the testator, although

continuing to earn renewal commissions as an agent or broker, could not have expected ever again to be a general agent. To refute the first proposition, the appellee attempted to introduce a broker's contract between Aetna Life Insurance Company and the testator, which used the words "terminal interest" to refer to renewal commissions of the broker. The evidence was excluded because the contract in question was dated 1936. We do not pass on whether it was error to exclude it, because apart from that evidence the Probate Court was not required to accept, nor do we, James G. Summers's contention that the words "terminal interest" have the specialized meaning he attributes to them. At best, James G. Summers proved that one insurance company, New England Mutual, uses "terminal interest" only with respect to general agents' post-termination commissions. Nothing in the evidence precludes the possibility that those or similar words might be used by other companies with respect to either agents or brokers, or that the testator might have sold policies with other companies in the course of his future business activity at M. G. Summers & Co. For examples of the use of similar words, see *McMahon* v. *Monarch Life Insurance Co.* 345 Mass. 261 (agent receiving "termination commissions"); *Farmer* v. *Aetna Life Insurance Co.* 270 Mass. 395 (general agent receiving "terminal rights" [at 397] and "terminal payments" [at 399]).

We have not found it necessary to consider questions raised at the trial as to the admissibility of certain oral testimony for the purpose of showing the testator's intentions at the time he executed the will. In our opinion, that testimony is at best inconclusive. The testator's intention as expressed in the will itself precludes a construction that fifty percent of the general agency renewal commissions are to be included in the Clause Fifth bequest. There is no error in the decree. The decree is affirmed. Costs and expenses in this court and in the Probate Court are to be in the discretion of the Probate Court.

*So ordered.*