NORMAN F. DACEY, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dacey v. Commissioner
Docket No. 24512-88
United States Tax Court
T.C. Memo 1992-187; 1992 Tax Ct. Memo LEXIS 212; 63 T.C.M. (CCH) 2584; Unemployment Ins. Rep. (CCH) P16,539; March 30, 1992, Filed *212 Decision will be entered under Rule 155. Norman F. Dacey, pro se. John Aletta and Robert E. Marum, for respondent. CLAPP
CLAPP
MEMORANDUM OPINION CLAPP, Judge: This case has been submitted to the Court with the facts fully stipulated pursuant to Rule 122. All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6654
Sec. 6661
1981
$ 44,455.06
$ 2,222.75
--
$ 3,406.34
--
1982
7,468.88
373.44
[1]
727.14
$  1,867.22
1983
9,462.72
473.14
[1]
579.05
2,365.68
1984
61,200.79
3,060.04
[1]
3,847.77
15,300.20
1985
50,016.36
2,500.82
[1]
2,866.15
12,504.09
After a concession with respect to section 6661 by respondent, the issues for decision are: *213 (1) When petitioner ceased to be a citizen of the United States. We hold that petitioner renounced his United States citizenship on April 27, 1988. (2) Whether petitioner is subject to United States income taxes on royalty income received by him from 1981 through 1985. We hold that he is. (3) Whether petitioner is subject to self-employment income taxes on royalty income received by him from 1981 through 1985. We hold that he is. (4) Whether petitioner is subject to income taxes on one-half of the social security benefits of $ 8,839 and $ 9,150 he received in 1984 and 1985, respectively, under section 86. We hold that he is. (5) Whether petitioner is liable for additions to tax under sections 6653(a)(1) and 6654 for tax years 1981 through 1985 and section 6653(a)(2) for tax years 1982 through 1985. We hold that he is. We incorporate by reference the stipulation of facts and attached exhibits. Petitioner resided in Ireland at the time he filed his petition. Petitioner is an author. His book, "How to Avoid Probate!", originally published in 1966 with updated versions published in 1980 and 1983, was a best seller and has sold over 2-1/2 million copies. Petitioner made *214 numerous radio and television appearances in the United States promoting the book. Petitioner received royalty income during the tax years 1981, 1982, 1983, 1984, and 1985 of $ 84,389.32, $ 22,886.38, $ 28,082.52, $ 130,085.32, and $ 106,510.42, respectively, on sales of this book. Payments were made by petitioner's New York publisher, Crown Publishers, Inc., either to petitioner at a Connecticut address or to his Connecticut bank account. Petitioner did not file any Forms 1040 or Forms 1040NR with the Internal Revenue Service for the tax years 1981 through 1985. Petitioner was a United States citizen by birth. On May 17, 1980, petitioner applied for a United States passport, declaring in the application that he was a United States citizen and the purpose of the trip was a "holiday". The application also noted that the trip would last for 2 months, and the countries to be visited were Ireland, England, and Italy. On the basis of that application, United States passport number A1746685 was issued to petitioner on June 2, 1980. Petitioner left the United States on or about August 15, 1980, and apparently moved to Ireland. Petitioner took up residence in Portacarron, Oughterard, *215 in County Galway, Ireland, and lived there from 1980 until about 1990 when he moved to Bath, Avon, England. He registered and voted in elections and referenda in Ireland from September 1980 until at least May 1989. Petitioner also registered his car in County Galway, Ireland, in December 1980, renewing it annually through 1987. On January 21, 1985, petitioner again applied for a United States passport, this time through the United States Consulate in Dublin, Ireland. The passport application again required petitioner to declare that he was a United States citizen, as well as attest to certain other facts. The additional representations included that petitioner had not: been naturalized as a citizen of a foreign state; taken an oath, or made an affirmation or other formal declaration of allegiance to a foreign state * * * made a formal renunciation of nationality either in the United States or before a diplomatic or consular officer of the United States in a foreign state * * *
The application required petitioner to declare that statements made in the application were "true and complete". Petitioner signed and submitted the application on January 21, 1985. Upon that *216 application, petitioner was issued United States passport number Z5173919 on January 29, 1985. Petitioner's passport applications of May 17, 1980 and January, 21, 1985, listed his occupation as "author" and "writer", respectively, and both contained above-quoted representations regarding petitioner's United States citizenship status. Petitioner subsequently was issued a passport by the Republic of Ireland on August 29, 1986. Petitioner formally renounced his United States citizenship on April 27, 1988. Petitioner appeared personally before Michael S. Owen, Vice Consul of the United States at the United States Embassy in Dublin, Ireland, and signed both an Oath of Renunciation of the Nationality of the United States and a Statement of Understanding. Before reaching the merits of the case, we first address petitioner's Motion for Recusal, filed September 18, 1991. Petitioner alleges that the Judge to whom this case was assigned acted in a prejudicial manner towards petitioner. Specifically, petitioner claims that he has been prejudiced by the Court's order dated November 7, 1990, setting for hearing petitioner's motion to compel certain discovery, and by the Court's order dated *217 January 24, 1991, directing the parties to proceed with the stipulation process with the objective of submitting the case to the Court under Rule 122. On September 21, 1988, petitioner timely filed a petition with this Court requesting a redetermination of the tax determined to be owing by respondent for tax years 1981 through 1985. The case was set for trial in Hartford, Connecticut, on March 19, 1990. Petitioner, who was in Ireland at the time, moved the Court for a continuance for health reasons. The Court granted that motion, and the case was subsequently recalendared for trial in Hartford, Connecticut, on November 26, 1990. Petitioner filed five separate motions before that trial date. Petitioner moved the Court to compel respondent to agree to certain stipulations and to grant summary judgment for petitioner; these motions were denied after due consideration on the merits. Petitioner also moved the Court to continue the case again, this time citing dissatisfaction with respondent's answers to his interrogatories. The Court denied petitioner's motion to continue the case because petitioner failed to put forth specific reasons as required by Rule 91(f). Petitioner then *218 moved the Court to compel respondent to answer the above-mentioned interrogatories. The Court set this matter for hearing at the trial session in Hartford, Connecticut, on November 26, 1990. Finally, petitioner moved the Court to reconsider continuing the case because health concerns prohibited petitioner from traveling to the United States. The Court's order dated November 14, 1990, granted a continuance and directed each party to propose how the matter could best be brought to resolution: ORDER
Based on petitioner's motion filed November 13, 1990, to reconsider denial of motion for continuance filed October 19, 1990, and the attached certificates of two different doctors setting forth petitioner's various health problems, in which both doctors advise against petitioner's traveling at this time, it is ORDERED that petitioner's above-referenced motion is granted in that this Court's order dated October 29, 1990, denying petitioner's motion for continuance is vacated and set aside. It is further ORDERED that this case is continued from the Court's November 25, 1990, Hartford, Connecticut trial session. It is further ORDERED that jurisdiction of this case is retained *219 by the undersigned. It is further ORDERED that petitioner shall file, on or before December 7, 1990, a report with respect to how he proposes to proceed with this case given the state of his health, his physical presence outside the United States, and his pro se status before the Court, bearing in mind that somehow, at some time, this matter must be concluded. It is further ORDERED that respondent shall file, on or before December 7, 1990, a report on the status of his communications with petitioner and any suggestions that respondent might have as to how this case can proceed to a conclusion.
Respondent indicated that the case was susceptible to submission under Rule 122, while petitioner requested a separate hearing on the discovery matter in Hartford, Connecticut, in May 1991. After due consideration of the proposals, the Court concluded that the case was susceptible to submission under Rule 122 and that, because of the unusual logistical circumstances, this was the best way to proceed. The Court's order dated January 24, 1990, directed the parties to continue the stipulation process to that end: ORDER
Pursuant to the Court's order dated November 14, 1990, each *220 of the parties herein has filed a report with suggestions as to how this case may proceed to a conclusion. The Court has considered both reports and finds that petitioner's suggestions are inadequate in that petitioner merely suggests that a hearing in this matter be rescheduled at a time and place convenient to the Court on or about May 1, 1991, which the Court considers to be an unrealistic suggestion in light of the prior continuances granted to petitioner for health reasons. The Court considers the suggestions contained in respondent's letter to petitioner dated November 30, 1990, to be a reasonable and rational outline of a course of action which would bring this matter to a conclusion. It appears to the Court that, given the state of petitioner's health, his presence outside the United States, and his continuing inability to travel to the United States for trial, the only way this case can be concluded is to have it submitted to the Court as a fully stipulated case under Rule 122 of the Tax Court Rules of Practice and Procedure. It appears that the case is susceptible of submission in this matter. After due consideration, it is ORDERED that petitioner proceed immediately *221 to respond to respondent's proposed stipulation of facts with the ultimate objective of submitting this case to the Court under Rule 122. It is further ORDERED that each of the parties shall file, on or before March 22, 1991, a report with respect to the foregoing. If a complete stipulation of facts is not ready for submission on or before March 22, 1991, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party.
The Court did not force petitioner to adopt or accede to any particular course of action regarding his case. The Court was simply trying, as it must, to move the case along and bring the matter to conclusion. No bias or preconceptions about petitioner or the merits of the case were involved in the Court's rulings or handling of the case. The Judge to whom the case was assigned was not, and is not, biased against petitioner. After consideration, petitioner's Motion for Recusal, filed September 18, 1991, is denied. Petitioner also questioned the propriety of respondent's notice of deficiency on several grounds. Petitioner claimed that *222 numerous improperly motivated audits of his tax returns were performed by respondent, including this one at the behest of the United States Department of State because of its displeasure with petitioner's political views. Petitioner further asserts that respondent's agents pursued this case as an "act of private revenge", disregarded the regulations as well as this Court's Rules, and "prepared [the] claim in a careless inaccurate and inefficient manner." Generally, this Court will not look behind the statutory notice of deficiency to examine the propriety of respondent's motives or the evidence used or procedures involved in making her determinations. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). A trial before this Court is a proceeding de novo to determine a taxpayer's correct tax liability. Our findings and holding are based on the merits of the case and not on any previous record developed at the administrative level. This Court has recognized a narrow, limited exception to the general rule where there is substantial evidence of unconstitutional conduct by respondent, and the integrity of our judicial process would be impugned. *223 Greenberg's Express, Inc. v. Commissioner, supra at 327-328. After a review of the record, we do not find any credible evidence of unconstitutional conduct by respondent in this case. We also have considered petitioner's arguments for review of respondent's procedures prior to issuing the notice of deficiency in this case and find them without merit. 1. Loss of United States Citizenship
Turning to the merits of the case, we first address the question of when petitioner lost his United States citizenship. Loss of United States citizenship is governed by the Immigration and Nationality Act of 1952, ch. 477, sec. 349(a)(1), (2), and (5), as amended, 8 U.S.C. sec. 1481(a)(1), (2), and (5) (1988). See sec. 1.1-1(c), Income Tax Regs. Title 8 U.S.C. section 1481(a) provides that a United States citizen shall lose his or her nationality if he or she voluntarily performs a statutorily designated expatriating act with the requisite intention of relinquishing United States citizenship. Vance v. Terrazas, 444 U.S. 252, 261 (1980). Title 8 U.S.C. section 1481(b) assigns the burden of proof to the party claiming that the loss has occurred. *224 Of the seven enumerated acts in 8 U.S.C. section 1481(a), only three have possible application in this case: (1) obtaining naturalization in a foreign state upon his own application, or * * * (2) taking an oath or making affirmation or other formal declaration of allegiance to a foreign state or * * * * * * (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State * * *
Petitioner, a United States citizen by birth, asserts that he lost his United States citizenship under either paragraphs (2) or (5). Although not expressly, petitioner also seems to make an argument for expatriation under paragraph (1). Petitioner initially claims that he lost his United States citizenship upon entry into Ireland in 1980. Petitioner maintains Irish authorities told him he already was a citizen of Ireland by descent. According to petitioner, both his grandfathers were born in Ireland; therefore, his parents were Irish citizens and, thus, so is he. Petitioner asserts that his name was entered into a "Registry of Foreign Births" at this time but fails to *225 provide any evidence to this effect. Petitioner also claims that he lost his United States citizenship by virtue of a letter dated January 1, 1981, and mailed from Galway, Ireland, on that date to the United States Department of State. In the letter, petitioner primarily cites his dissatisfaction with certain aspects of United States foreign policy as the reason for his "ultimate protest -- the renunciation of my United States citizenship", which he claims the letter performs. The State Department has no record of the letter. As the party claiming loss of United States citizenship, petitioner bears the burden of proving such loss, 8 U.S.C. section 1481(b), as well as the burden of proving that respondent's deficiency determination was incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has failed to show that he lost his United States citizenship at any time during the years at issue. No evidence exists in the record establishing that petitioner obtained naturalization in Ireland upon his own application or that of an authorized agent as required by 8 U.S.C. section 1481(a)(1). Nor is there evidence that petitioner took an oath, made *226 an affirmation, or any other type of formal declaration of allegiance to Ireland as required by 8 U.S.C. section 1481(a)(2). We need not decide whether petitioner was an Irish citizen by descent because the expatriating statute requires more than an acknowledgment of dual citizenship to effectuate loss of United States citizenship. United States v. Matheson, 532 F.2d 809 (2d Cir. 1976); Jalbuena v. Dulles, 254 F.2d 379 (3d Cir. 1958). Petitioner presents only an Irish passport issued to him on August 29, 1986, County Galway automobile registration documents from 1980 through 1987, and a certification stating that petitioner voted in Irish elections from 1980 through 1989. None of this evidence establishes that petitioner satisfied the statutory expatriation requirements. Both the passport, which was issued after the time period at issue, and the Irish automobile registration are irrelevant to loss of United States citizenship. In addition, the Supreme Court held in Afroyim v. Rusk, 387 U.S. 253 (1967), that participation in foreign elections is not an act of expatriation. Thus, petitioner's arguments under 8 U.S.C. *227 section 1481(a)(1) and (2) must fail. The State Department has certified its complete records on petitioner's citizenship status, and review of them fails to disclose the letter petitioner claims to have mailed in 1981. However, even if we were to accept that the letter was mailed by petitioner from Ireland as petitioner claims and was received by the State Department in 1981, it would fail to effectuate a loss of citizenship. The letter is legally insufficient under 8 U.S.C. sec. 1481(a)(5) (1988), which requires formal renunciation to be "in such form as may be prescribed by the Secretary of State * * *." The Secretary did prescribe forms required to be used by persons renouncing United States citizenship under paragraph (a)(5), and the letter was not on any such form. The State Department's regulations in effect in 1981 required that the renuncient sign forms containing specific expatriating language and describing the repercussions of the act. Such forms are the very ones used by petitioner when he successfully renounced his United States citizenship at the American Embassy in Dublin, Ireland, in 1988. See 22 C.F.R. sec. 50.50 (1991). This was not a nominal requirement; *228 expatriation is a serious act that should be undertaken with a full understanding of the consequences. Moreover, paragraph (a)(5) requires that when a renunciation occurs in a foreign state,it shall be made "before a diplomatic or consular officer of the United States * * *". Petitioner simply did not comply with these requirements until April 27, 1988. Moreover, when petitioner applied for and received another United States passport in 1985, he expressly represented that he was still a United States citizen and had not taken actions to renounce that citizenship or obtain nationalization in a foreign state. Petitioner cannot gain some governmental benefits on the basis of certain representations and then take a precisely contrary position in order to avoid tax liability; he is estopped from taking the contrary position. United States v. Matheson, supra at 819; Rexach v. United States, 390 F.2d 631, 632 (1st Cir. 1968). Therefore, petitioner's claim of loss of United States citizenship prior to 1988 under 8 U.S.C. section 1481(a)(5) also must fail. On April 27, 1988, petitioner personally appeared at the American Embassy in Dublin, *229 Ireland. The American consular officer, Michael S. Owen, explained the seriousness and consequences of renunciation of United States citizenship. Petitioner was required to and did read the Statement of Understanding in connection with his desire to expatriate. Petitioner then signed the Statement of Understanding and the Oath of Renunciation of the Nationality of the United States, and by doing so, fulfilled the requirements of 8 U.S.C. section 1481(a)(5) in the manner and form prescribed by the Secretary of State. See 22 C.F.R. sec. 50.50 (1991). We hold that petitioner lost his United States citizenship on April 27, 1988. He was a United States citizen until that date. 2. Royalty Income
As a citizen of the United States during the years at issue, petitioner is subject to United States Federal income tax on his worldwide income. Sec. 1; Cook v. Tait, 265 U.S. 47 (1924); sec 1.1-1(a)(1) and (c), Income Tax Regs. It is unnecessary to determine whether that income was from sources within or without the United States since petitioner is not a nonresident alien. See sec. 861. Petitioner's residency status is likewise irrelevant. Petitioner points *230 out that the United States-Irish Tax Convention exempts from United States taxation certain royalty income of Irish residents. United States-Ireland Income Tax Treaty, Sept. 13, 1949, art. VIII, par. (1), 2 U.S.T. (Vol. 2) 2303, 2311. The convention, however, expressly excludes United States citizens from the definition of a resident of Ireland. Id. at art. II, par. (1)(g), 2 U.S.T. (Vol. 2) 2307. Petitioner's royalty income received during the years at issue is includable in his gross income as a United States citizen. Sec. 61(a)(6). Since no related deductions were claimed relating to production of that income, those amounts represent petitioner's taxable income for those years. Sec. 63(a). Thus, we hold that petitioner is fully taxable on the royalty income he received during 1981, 1982, 1983, 1984, and 1985 in the amounts of $ 84,389.32 22,886.38, $ 28,082.52, $ 130,085.32 and $ 106,510.42, respectively. 3. Self-Employment Taxes
We also must decide whether petitioner is liable for self-employment tax on his royalty income under sections 1401 and 1402. Petitioner bears the burden of proof on this issue as he does with all of the remaining issues. With certain *231 exceptions not relevant here, self-employment income is defined generally as net income from a "trade or business" as that term is defined in section 162. Sec. 1402(a), (c),and (d); sec. 1.1402(a)-1, Income Tax Regs. It is undisputed that the royalty income petitioner received arose from writing and updating his book, "How to Avoid Probate!". Petitioner's authorship, updating efforts, and radio and television appearances were undertaken with a profit objective. He expended significant personal time and effort in this pursuit. We hold that petitioner engaged in a trade or business as an author and promoter of his writings. See Hittleman v. Commissioner, T.C. Memo. 1990-325; Allen v. Commissioner, T.C. Memo. 1982-93. Payment in the form of royalties in subsequent years does not alter the trade or business nature of the activity, nor defeat the fact that the royalties were derived from petitioner's self-employment. See Oates v. Commissioner, 18 T.C. 570, 585 (1952), affd. 207 F.2d 711 (7th Cir. 1953). Moreover, the record indicates that an updated version of petitioner's book was published during one *232 of the years at issue. Petitioner argues that, as a nonresident alien, he is exempt from the tax pursuant to the parenthetical language of section 1402(b). We have held, however, that petitioner was a United States citizen for all of the years at issue. Petitioner also claims that royalty income cannot be self-employment income. This Court has held to the contrary. Hittleman v. Commissioner, supra; Allen v. Commissioner, supra.
Petitioner puts forth no other argument, and the record is devoid of any additional evidence relating to this issue. We hold that petitioner has failed to satisfy his burden of proof on this issue and is liable for self-employment tax for 1981 through 1985. 4. Tax on Social Security Benefits
Petitioner also received social security benefits during 1984 and 1985 of $ 8,839 and $ 9,150, respectively. Section 86 provides that one-half of the social security benefits received by taxpayers with incomes in excess of certain limits are subject to income tax. Petitioner's income for 1984 and 1985 as determined above exceeds the limits for all filing categories. See sec. 86(c). Petitioner's sole argument *233 on this issue is that he believes the social security benefits he received during 1984 and 1985 were the tax-free "return of premiums he paid over a 47-year period". The statute, however, provides for no such basis accounting. Rather, the law requires inclusion of social security benefits in gross income where the taxpayer's income exceeds limits that are exceeded in this case. Thus, we hold that petitioner is liable for income taxes on $ 4,419.50 and $ 4,575 for 1984 and 1985, respectively. 5. Additions to Tax
Last, we must decide whether petitioner is liable for additions to tax under sections 6653(a)(1) for 1981 through 1985 and section 6653(a)(2) for tax years 1982 through 1985. Negligence has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Liability for section 6653(a) additions to tax results from a holding that the underpayment of tax was due to negligence or intentional disregard of the rules or regulations. Petitioner bears the burden of proof. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). *234 Petitioner wrote a book on the subject of probate in the United States, including discussion of the related taxes. In addition, he made many radio and television appearances regarding his book. Authorship in a complex area such as this implies at least some level of awareness and sophistication of the existence and importance of tax statutes and regulations governing United States citizens and their transactions. We believe petitioner was cognizant of the requirement to attend to tax matters and was capable of acquiring the relevant information or assistance to properly comply with his tax obligations. Thus, we hold that petitioner is liable for the additions to tax under section 6653(a). Liability for section 6654 additions to tax turns on whether a sufficient estimated tax is paid for each year in issue. This addition is imposed unless petitioner can show he comes within one of the exceptions set forth in section 6654(e). See Pring v. Commissioner, T.C. Memo. 1989-340. Since petitioner did not file any returns or make any payments for the years at issue, and we have held that petitioner received substantial taxable income during those years, and petitioner *235 has not shown that any of the exceptions of section 6654(e) apply, we hold that petitioner is liable for the additions to tax under section 6654. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩