T.C. Memo. 2000-228

UNITED STATES TAX COURT

JAMES R. PALMER AND LINDA D. PALMER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19171-98.                    Filed July 28, 2000.

<u>Ruth A. Rowlette</u>, for petitioners.

<u>Christian A. Speck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$44,375 in petitioners' Federal income tax for 1995.

The issues remaining for decision are:

(1)  Did petitioner James R. Palmer (Mr. Palmer) construc-
tively receive during 1995 $95,935 of compensation that he did
not actually receive until after that year?  We hold that he did.

(2)  Was the $5,100 that Mr. Palmer received during 1995 with respect to petitioners' California house rental income or compensation for that year?  We hold that that amount was compensation.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Redding, California, at the time the petition was filed.

Mr. Palmer received a bachelor's degree in chemical engineering in 1969, a master's degree in finance in 1972, and a law degree in 1990.

In 1974, Mr. Palmer began working as a chemical engineer for Aerojet General Corporation (Aerojet), a U.S. defense contractor. Mr. Palmer held a number of positions during the approximate 20-year period of his employment with Aerojet.  The last position that he held while employed by Aerojet was vice president of operations of the high-tech bullet plant in Downey, California (Downey plant), that Aerojet's ordnance division (Aerojet Ordnance) operated.

In 1994, Olin Corporation (Olin), which was primarily a U.S. defense contractor, acquired Aerojet Ordnance, including its Downey plant, on behalf of Olin's ordnance division (Olin Ordnance), an ammunitions manufacturer.  Because of Mr. Palmer's experience with Aerojet Ordnance and, in particular, with the

Downey plant, Olin Ordnance wanted to retain Mr. Palmer as a consultant.

On May 2, 1994, Olin on behalf of Olin Ordnance[1] and Mr. Palmer entered into an agreement entitled "OLIN CONSULTING AGREEMENT" (May 2, 1994 Olin/Palmer consulting agreement). Pursuant to that agreement, Olin Ordnance retained Mr. Palmer as an independent contractor to provide consulting services to it in connection with, inter alia, the transition of Aerojet Ordnance that Olin Ordnance had acquired from Aerojet during that year. The May 2, 1994 Olin/Palmer consulting agreement was to remain in effect until October 31, 1994, unless terminated sooner by mutual agreement of Olin Ordnance and Mr. Palmer, by the death of Mr. Palmer, or for other reasons set forth in that agreement. Pursuant to the May 2, 1994 Olin/Palmer consulting agreement, the term of that agreement could have been extended only by the mutual agreement of Olin Ordnance and Mr. Palmer as set forth in a written document.

In July and August 1994, certain representatives of Olin Ordnance approached Mr. Palmer several times in an effort to persuade him to accept a consulting assignment as an independent contractor at Olin Ordnance's plant in Marion, Illinois (Marion plant). Olin Ordnance wanted Mr. Palmer to coordinate the

---

[1]For convenience, we shall hereinafter refer only to Olin Ordnance, a division of Olin Corporation, and not to Olin Corporation.

transition of certain business from its Downey plant to its Marion plant and to monitor the other manufacturing and administrative functions at its Marion plant, which had been experiencing certain operational difficulties. Mr. Palmer was not interested in the overtures that Olin Ordnance made to him during the summer of 1994 because he wanted to start practicing law in Redding, California.

Olin Ordnance ultimately succeeded in persuading Mr. Palmer to agree to act as a consultant at its Marion plant. On September 12, 1994, Mr. Palmer and Olin Ordnance entered into an agreement entitled "OLIN CONSULTING AGREEMENT" (September 12, 1994 Olin/Palmer consulting agreement) which superseded as of September 12, 1994, the May 2, 1994 Olin/Palmer consulting agreement. Pursuant to the September 12, 1994 Olin/Palmer consulting agreement, Olin Ordnance retained Mr. Palmer as an independent contractor to provide certain consulting services at its Marion plant under the direction of R.R. Harris (Mr. Harris) who was employed by Olin Ordnance at that plant. That agreement, as executed on September 12, 1994, provided that it was to continue for a period of up to nine months after September 12, 1994. On September 15, 1994, the September 12, 1994 Olin/Palmer consulting agreement was modified to provide that the term of that agreement was to continue until March 31, 1995, and thereafter on a month-to-month basis for a period of three months,

unless terminated sooner by mutual agreement of Olin Ordnance and Mr. Palmer, by the death of Mr. Palmer, or for other reasons set forth in that agreement.  (We shall refer to the September 12, 1994 Olin/Palmer consulting agreement, as modified on September 15, 1994, as the Marion plant/Palmer consulting agreement). Pursuant to the Marion plant/Palmer consulting agreement, the term of that agreement could have been extended only by mutual agreement of Olin Ordnance and Mr. Palmer as set forth in a written document.

The Marion plant/Palmer consulting agreement provided in pertinent part:

> THIS AGREEMENT ("Agreement"), made as of this 12th day of September, 1994, by and between James R. Palmer, an individual, residing at 9039 Tudsbury Road, Loomis, CA 95650 ("Consultant"), and Olin Corporation, Ordnance Division, 10101 9th Street North, St. Petersburg, Florida  33716, ("Olin").
>
>      \*     \*     \*     \*     \*     \*     \*
>
>    5.   CONSULTING FEES
>
> Until March 31, 1995, Olin guarantees a pay- ment of $3,000.00 per week, and, thereafter on a month-to-month basis for a period of three (3) months, with a maximum limitation of $117,000.00 as fees for rendering Ser- vices.  Olin will reimburse Consultant for the reasonable and necessary out-of-pocket travel and living expenses which are actually incurred in the performance of Services.  In addition, Olin agrees to reimburse additional expenses as outlined in Exhibit D, which is attached hereto. \* \* \* The total fees, plus necessary out-of-pocket expenses, are not to exceed $164,000.00.

6.    PAYMENT OF CONSULTING FEES

      Once a month, Consultant shall submit a de-
      tailed invoice for fees and expenses for the
      Services, along with the required Olin Ord-
      nance Consultant Time Record(s).  The date,
      number of hours, days worked and a brief
      description of tasks performed must be in-
      cluded with each invoice. * * * Correct in-
      voices submitted for payment to Mr. R.R.
      Harris for approval shall be paid within
      thirty (30) calendar days of the date of
      receipt.

      *     *     *     *     *     *     *

19.   ENTIRE AGREEMENT

      Except as herein expressly provided, this
      Agreement constitutes the entire understand-
      ing between the parties with respect to the
      subject matter hereof and shall supersede all
      previous negotiations, commitments, and un-
      derstandings, except for any Non Disclosure
      Agreement relating to the matters herein
      which has or may be executed between the
      parties.

Exhibit D, which was incorporated as part of paragraph 5 of

the Marion plant/Palmer consulting agreement relating to "CON-

SULTING FEES" to be paid to Mr. Palmer, provided in pertinent

part:  "1.  Consultant will be reimbursed $1,700/month for

expenses on California home."  The California home to which

Exhibit D referred was the residence of petitioners in Loomis,

California (Loomis residence), in which they lived before Mr.

Palmer accepted the consulting position at the Marion plant

pursuant to the Marion plant/Palmer consulting agreement and

which they rented to an unidentified person during the term of

that agreement.  As a condition to his accepting that position, Mr. Palmer required, inter alia, that Olin Ordnance pay him $1,700 each month during the term of that agreement, which was approximately equal to the difference between (1) the monthly rent that petitioners were to receive on their Loomis residence throughout the period during which Mr. Palmer was consulting at the Marion plant and (2) the total amount of monthly mortgage, insurance, and maintenance expenses that they were to pay on that residence throughout that period.  (We shall refer to the additional $1,700 that Mr. Palmer was to receive each month pursuant to paragraph 5 and Exhibit D of the Marion plant/Palmer consulting agreement as the Loomis residence monthly payment.)  At no time did Olin Ordnance receive a leasehold or any other interest in the Loomis residence in exchange for the Loomis residence monthly payments.

Pursuant to paragraph 6 of the Marion plant/Palmer consulting agreement, Mr. Palmer was required to submit on a monthly basis to Mr. Harris at the Marion plant a detailed invoice (monthly invoice) for Mr. Palmer's fees and expenses with respect to the services that he performed under that agreement for the monthly period covered by the invoice.  Pursuant to paragraph 6 of the Marion plant/Palmer consulting agreement and the policy of Olin Ordnance (company policy), promptly upon receipt of each of Mr. Palmer's monthly invoices, Mr. Harris was required to review

it and determine whether to approve the aggregate amount of fees and expenses claimed in each such invoice or some other amount. (We shall refer to Mr. Harris' review of each of Mr. Palmer's monthly invoices as Olin Ordnance's invoice review process.) Promptly after Mr. Harris completed Olin Ordnance's invoice review process, he was to return each of Mr. Palmer's monthly invoices as approved by him to Mr. Palmer.

Pursuant to company policy, after Mr. Palmer received from Mr. Harris each of his monthly invoices as approved by Mr. Harris, Mr. Palmer was required to forward each such invoice promptly to Rita Svarzkopf (Ms. Svarzkopf). Throughout the period during which Mr. Palmer provided consulting services to Olin Ordnance at its Marion plant, Ms. Svarzkopf was the procurement coordinator at Olin Ordnance's office in St. Petersburg, Florida (Olin Ordnance's Florida office). As procurement coordinator, Ms. Svarzkopf was responsible for determining promptly upon receipt of each of Mr. Palmer's monthly invoices as approved by Mr. Harris whether the charges reflected on each such invoice complied with the terms of the Marion plant/Palmer consulting agreement. Pursuant to company policy, if Ms. Svarzkopf determined that each of Mr. Palmer's monthly invoices as approved by Mr. Harris did so comply, she was required to forward each such invoice promptly to Olin Ordnance's accounts payable department for payment within 30 days after Mr. Harris, on behalf of Olin

Ordnance, first received it, as required by paragraph 6 of the Marion plant/Palmer consulting agreement. (We shall refer to the review and payment authorization process relating to each of Mr. Palmer's approved monthly invoices for which Ms. Svarzkopf was responsible as Olin Ordnance's invoice payment authorization process.)

Sometime prior to March 22, 1995, Olin Ordnance asked Mr. Palmer to extend the term of the Marion plant/Palmer consulting agreement which was to expire on June 30, 1995, and to specify the conditions under which he was willing to agree to such an extension. As part of his continuing discussions with Olin Ordnance about, and in response to, that request, Mr. Palmer sent a memorandum dated March 22, 1995 (March 22, 1995 memorandum) to Mr. Harris and to Jack Picker (Mr. Picker), who at that time was vice president of human resources of Olin Ordnance. The March 22, 1995 memorandum stated in pertinent part:

> This memo responds to your request that I identify the conditions under which I would agree to an extension of my present consulting contract thru January 1996. I appreciate the vote of confidence. I offer the following thoughts:
>
> 1. All terms of the existing contract continue as is except that the expiration date be extended to January 31, 1996.
>
> 2. In addition, I would have the right to postpone receipt by me of payment for any monthly invoice to a future date of my choosing, but in any case not later than January 31, 1997. In such a case, I would present my invoice and backup material monthly as incurred (as is done now) so that Olin

could perform the necessary audits upon submittal. Olin would then hold the payment until called for by me.

3.    In addition, Olin would pay me the equivalent of 5% annual simple interest on the deferred payments of item 2 above.

As required by paragraph 6 of the Marion plant/Palmer consulting agreement, for each month from the inception of the Marion plant/Palmer consulting agreement through June 1995,[2] Mr. Palmer submitted to Mr. Harris at the Marion plant a monthly invoice for his fees and expenses with respect to the services that he performed under that agreement for the monthly period covered by the invoice, including the $1,700 Loomis residence monthly payment, as follows:

---

[2]Although, as discussed below, the invoice submitted by Mr. Palmer to Olin Ordnance for June 1995 covered the period June 5 through July 2, 1995, that invoice did not reflect any fees or expenses incurred after June 30, 1995, the date on which the Marion plant/Palmer consulting agreement was to terminate.

| Mr. Palmer's Monthly Invoice Number[3] | Period Covered by Mr. Palmer's Monthly Invoice | Date of Submission of Mr. Palmer's Monthly Invoice |
|---|---|---|
| 0006 | 09/01/94-10/09/94[4] | 10/09/94 |
| 0007 | 10/10/94-11/06/94 | 11/07/94 |
| 0008 | 11/07/94-12/04/94 | 12/22/94 |
| 0009 | 12/05/94-12/31/94 | 12/29/94 |
| 0010 | 01/02/95-02/05/95 | 02/05/95 |
| 0011 | 02/06/95-03/05/95 | 03/05/95 |
| 0012 | 03/06/95-04/02/95 | 04/15/95 |
| 0013 | 04/03/95-04/30/95 | 05/07/95 |
| 0014 | 05/01/95-06/04/95 | 06/06/95 |
| 0015 | 06/05/95-07/02/95[5] | 07/09/95 |

As required by paragraph 6 of the Marion plant/Palmer consulting agreement and company policy, Mr. Harris promptly reviewed for accuracy each of Mr. Palmer's monthly invoices 0006 through 0015. With one exception, Mr. Harris completed Olin Ordnance's invoice review process of each of Mr. Palmer's monthly invoices 0006 through 0015 in less than a week, generally in a

---

[3]The number shown for each of Mr. Palmer's monthly invoices is the invoice number that was listed on each of those invoices. (Hereinafter, we shall refer to each of Mr. Palmer's monthly invoices by reference to the invoice number that was listed on each such invoice.)

[4]Although Mr. Palmer's monthly invoice 0006 covered the period Sept. 1 through Oct. 9, 1994, none of the fees and none of the expenses (except for $322.03 of expenses most of which were incurred by Mr. Palmer in moving from California to Marion, Ill.) claimed in that invoice was incurred prior to Sept. 12, 1994, the date on which the September 12, 1994 Olin/Palmer consulting agreement became effective.

[5]See supra note 2.

day or two.[6]  Mr. Harris approved, with very minor changes in

several instances, the aggregate amount of fees and expenses

claimed in each of those monthly invoices.[7]

After Mr. Harris completed Olin Ordnance's invoice review

process with respect to each of Mr. Palmer's monthly invoices

0006 through 0010, Mr. Harris promptly returned each such ap-

proved invoice to Mr. Palmer, and Mr. Palmer promptly forwarded

each such invoice to Ms. Svarzkopf at Olin Ordnance's Florida

office.  Ms. Svarzkopf completed Olin Ordnance's invoice payment

authorization process of each of Mr. Palmer's approved monthly

invoices 0006 through 0010 within a few days after having re-

ceived each such invoice.  She thereafter promptly forwarded each

such invoice to Olin Ordnance's accounts payable department for

payment.

As required by paragraph 6 of the Marion plant/Palmer

consulting agreement, Olin Ordnance paid Mr. Palmer the amount

that it owed to him with respect to each of his approved monthly

invoices 0006 through 0010 within 30 days after Mr. Harris, on

---

[6]The one exception relates to Mr. Palmer's monthly invoice
0008.  Mr. Palmer submitted that monthly invoice on Dec. 22,
1994, and Mr. Harris completed Olin Ordnance's invoice review
process and approved it on Jan. 4, 1995.

[7]For convenience, we shall refer to Mr. Palmer's monthly
invoices as approved by Mr. Harris (and, as discussed below, by
D.E. Findley) on behalf of Olin Ordnance as approved monthly
invoices, even though in several instances there were very minor
changes to some of the amounts of fees and/or expenses claimed in
certain of those invoices.

behalf of Olin Ordnance, first received each such invoice from Mr. Palmer by issuing a check to Mr. Palmer in the following amount on the date indicated:

| Mr. Palmer's Monthly Invoice Number | Amount of Check Issued by Olin Ordnance | Date of Check Issued by Olin Ordnance |
|---|---|---|
| 0006 | $16,118.84 | 10/20/94 |
| 0007 | 16,417.84 | 11/17/94 |
| 0008 | 15,497.00 | 01/12/95 |
| 0009 | 17,431.52 | 01/12/95 |
| 0010 | 19,965.00 | 02/16/95 |

Each of the payments that Mr. Palmer received in January and February 1995 from Olin Ordnance under the Marion plant/Palmer consulting agreement for his respective approved monthly invoices 0008, 0009, and 0010 included the $1,700 Loomis residence monthly payment required by paragraph 5 of that agreement relating to "CONSULTING FEES" and Exhibit D of that agreement.

After Mr. Harris completed Olin Ordnance's invoice review process with respect to each of Mr. Palmer's monthly invoices 0011, 0012, and 0013 relating to the monthly periods February 6 through March 5, 1995, March 6 through April 2, 1995, and April 3 through April 30, 1995, respectively, Mr. Harris promptly re-turned each such approved invoice to Mr. Palmer. However, Mr. Palmer did not promptly forward any of his approved monthly invoices 0011, 0012, and 0013 to Ms. Svarzkopf at Olin Ordnance's Florida office. Instead, he retained those invoices until May 22, 1995, when he sent them to Ms. Svarzkopf with a transmittal memorandum (May 22, 1995 memorandum). The May 22, 1995 memoran-

dum stated in pertinent part:

> I am enclosing the three invoices for Feb., Mar., and April for your review and approval.  However, PLEASE DO NOT ISSUE PAYMENTS.  Please phone me and we can discuss the agreement that I am working on with Cutler and Picker.

On June 1, 1995, Ms. Svarzkopf subjected Mr. Palmer's approved monthly invoices 0011, 0012, and 0013 that Mr. Palmer had sent to her on May 22, 1995, to Olin Ordnance's invoice payment authorization process, which took no more than a day. Ms. Svarzkopf found each of those monthly invoices to be in compliance with the Marion plant/Palmer consulting agreement. Because of Mr. Palmer's request in his May 22, 1995 memorandum that Olin Ordnance not pay any of those invoices, Ms. Svarzkopf did not immediately forward those invoices to Olin Ordnance's accounts payable department for payment.  Instead, Ms. Svarzkopf sought guidance from Glen Cutler (Mr. Cutler), an employee of Olin Ordnance.  On June 2, 1995, Mr. Cutler advised Ms. Svarzkopf to honor Mr. Palmer's request that Olin Ordnance not pay any of his approved monthly invoices 0011, 0012, and 0013 until Mr. Palmer directed Olin Ordnance to pay each such invoice.  Consequently, Ms. Svarzkopf did not forward Mr. Palmer's approved monthly invoices 0011, 0012, and 0013 to Olin Ordnance's accounts payable department for payment but retained those invoices until Mr. Palmer directed Olin Ordnance to pay them.  At Mr. Palmer's direction, Olin Ordnance paid each of his approved monthly

invoices 0011, 0012, and 0013 on January 11, 1996, when it issued three checks to him in the amounts of $15,247.46, $17,678.53, and $17,273.83, respectively. The only reasons Olin Ordnance did not pay Mr. Palmer the amount that it owed to him with respect to each of his approved monthly invoices 0011 through 0013 within 30 days after Mr. Harris first received each such invoice during 1995 were that Mr. Palmer did not promptly forward each of those invoices to Ms. Svarzkopf after Mr. Harris returned each such invoice to him and that Mr. Palmer did not want Olin Ordnance to make any such payment to him during 1995.

After Mr. Harris completed Olin Ordnance's invoice review process with respect to Mr. Palmer's monthly invoices 0014 and 0015 relating to the monthly periods May 1 through June 4, 1995, and June 5 through July 2, 1995,[8] respectively, Mr. Harris promptly returned each such approved invoice to Mr. Palmer. Mr. Palmer promptly forwarded each of his approved monthly invoices 0014 and 0015 to Ms. Svarzkopf at Olin Ordnance's Florida office. Ms. Svarzkopf promptly completed Olin Ordnance's invoice payment authorization review process with respect to each such invoice. However, at the request of Mr. Palmer that Olin Ordnance not pay him during 1995 the amount that it owed to him with respect to each of his approved monthly invoices 0014 and 0015, Ms. Svarzkopf did not send either of those invoices to Olin Ord-

---

[8]See supra note 2.

nance's accounts payable department for payment. Instead, she retained each of those invoices until Mr. Palmer directed Olin Ordnance to pay each of them. At the direction of Mr. Palmer, Olin Ordnance paid each of his approved monthly invoices 0014 and 0015 on April 3, 1996, and January 9, 1997, respectively, when it issued checks to him in the respective amounts of $19,427.00 and $17,961.82. The only reason Olin Ordnance did not pay Mr. Palmer the amount that it owed to him with respect to each of his approved monthly invoices 0014 and 0015 within 30 days after Mr. Harris first received each such invoice during 1995 was that Mr. Palmer did not want Olin Ordnance to make any such payment to him during that year.

By its terms, the Marion plant/Palmer consulting agreement terminated as of June 30, 1995. However, Mr. Palmer continued to provide consulting services to Olin Ordnance after June 30, 1995. On July 17, 1995, and July 20, 1995, Olin Ordnance and Mr. Palmer, respectively, executed a document entitled "AMENDMENT 1" that modified the terms of the Marion plant/Palmer consulting agreement. (We shall refer to AMENDMENT 1 as the July 1995 amendment and to the Marion plant/Palmer consulting agreement as modified by that amendment as the amended Marion plant/Palmer consulting agreement.) The July 1995 amendment provided:

> This is AMENDMENT 1 to the Consulting Agreement between James R. Palmer and Olin Corporation, Ordnance Division, dated September 12, 1994.

1. TERM:  Delete the first sentence of this paragraph in its entirety and insert the following in its place:

> This Agreement will become effective as of the day set forth above and will continue until December 31, 1995, unless terminated sooner by mutual agreement of the parties, or by the death of Consultant, or by the manner hereinafter set out.

5. CONSULTING FEES:  Delete this paragraph in its entirely and replace with the following:

> During the term of this Agreement, Olin agrees to pay to Consultant the sum of $3,000.00 per week, with a maximum limitation of $201,000.00 as fees for rendering Services.  Olin will reimburse Consultant for the reasonable and necessary out-of-pocket travel and living expenses which are actually incurred in the performance of Services.  In addition, Olin agrees to reimburse additional expenses as outlined in Exhibit D, Revision 1 dated 071195, which is attached hereto. * * * The total fees, plus necessary out-of-pocket expenses, are not to exceed $315,000.00.

6. PAYMENT OF CONSULTING FEES:  Delete the last sentence of this paragraph in its entirety, and insert the following in its place:

> Correct invoices submitted for payment to Mr. R.R. Harris for approval shall be paid within thirty (30) calendar days of the date of receipt, or deferred to a mutually agreed upon future date, but not later than January 31, 1997.  In addition, Olin agrees to pay Consultant the equivalent of 5% annual simple interest on any deferred payments.

Exhibit D, Revision 1, dated July 11, 1995, which was incorporated as part of paragraph 5 of the July 1995 amendment relating to "CONSULTING FEES" to be paid to Mr. Palmer, provided in pertinent part:  "1.  Consultant will be reimbursed $1,700.00 per month for expenses on California home [Loomis residence]."

As quoted above, paragraph 6 of the July 1995 amendment provided, inter alia, that correct invoices submitted to Mr. Harris "shall be paid within thirty (30) calendar days of the date of receipt, or deferred to a mutually agreed upon future date, but not later than January 31, 1997". Both Mr. Palmer and Olin Ordnance interpreted, understood, and applied that provision as requiring Olin Ordnance to pay the amount that it owed to Mr. Palmer with respect to each of his approved monthly invoices within 30 days after it first received each such invoice or, at the direction of Mr. Palmer, thereafter on a date that Mr. Palmer selected which was not later than January 31, 1997.

Pursuant to paragraph 6 of the amended Marion plant/Palmer consulting agreement, on the dates indicated Mr. Palmer first submitted to Olin Ordnance at its Marion plant the following monthly invoices covering the following periods:

| Mr. Palmer's Monthly Invoice Number | Period Covered by Mr. Palmer's Monthly Invoice | Date of Submission of Mr. Palmer's Monthly Invoice |
| --- | --- | --- |
| 0016 | 07/03/95-07/30/95 | 07/31/95 |
| 0017 | 07/31/95-09/03/95 | 09/01/95 |
| 0018 | 09/04/95-10/01/95 | 10/03/95 |
| 0019 | 10/02/95-10/29/95 | 11/20/95 |
| 0020 | 10/30/95-12/03/95 | 12/15/95 |

Each of Mr. Palmer's monthly invoices 0016 through 0020 was promptly reviewed and approved, with very minor changes in

several instances, by D.E. Findley (Mr. Findley)[9] on behalf of Olin Ordnance and promptly returned to Mr. Palmer. Mr. Palmer promptly forwarded each of his approved monthly invoices 0016 through 0020 to Ms. Svarzkopf at Olin Ordnance's Florida office. Ms. Svarzkopf promptly completed Olin Ordnance's invoice payment authorization process with respect to each such invoice. However, pursuant to paragraph 6 of the amended Marion plant/Palmer consulting agreement, Mr. Palmer directed Olin Ordnance not to pay him the amount that it owed to him with respect to each of his approved monthly invoices 0016 through 0020 within 30 days after Olin Ordnance first received each such invoice. At Mr. Palmer's direction, Olin Ordnance paid Mr. Palmer the amount that it owed to him with respect to each of his approved monthly invoices 0016 through 0020 by issuing a check to him in the following amount on the following date selected by Mr. Palmer:

| Mr. Palmer's Monthly Invoice Number | Amount of Check Issued by Olin Ordnance | Date of Check Issued by Olin Ordnance |
|---|---|---|
| 0016 | $15,173.00 | 01/09/97 |
| 0017 | 18,243.36 | 01/09/97 |
| 0018 | 15,824.16 | 01/09/97 |
| 0019 | 15,239.46 | 01/09/97 |
| 0020 | 404.89 | 01/09/97 |

The only reason Olin Ordnance did not pay Mr. Palmer the amount that it owed to him with respect to each of his approved monthly

---

[9]The record does not disclose why Mr. Findley, instead of Mr. Harris, reviewed and approved, on behalf of Olin Ordnance, Mr. Palmer's monthly invoices 0016 through 0020.

invoices 0016 through 0019 within 30 days after Olin Ordnance first received each such invoice during 1995 was that Mr. Palmer did not want Olin Ordnance to make any such payment to him during that year.

At all times during the performance of the Marion plant/ Palmer consulting agreement, both before and after the execution of the July 1995 amendment, Olin Ordnance was ready, willing, and able to pay Mr. Palmer the amount that it owed to him with respect to each of his approved monthly invoices within 30 days after it first received each such invoice.

Olin Ordnance issued Form 1099-MISC (Form 1099), Miscellaneous Income, to Mr. Palmer, which showed that Mr. Palmer received $52,894.31 of nonemployee compensation from Olin Ordnance during 1995. The $52,894.31 amount reported by Olin Ordnance in Form 1099 equals the total amount of the payments that Olin Ordnance made to Mr. Palmer during 1995 with respect to his approved monthly invoices 0008 through 0010, which included $5,100 of Loomis residence monthly payments.[10]

Petitioners, cash basis taxpayers, filed a joint Form 1040, U.S. Individual Income Tax Return (joint return), for the year at issue. In Schedule E, Supplemental Income and Loss, of the joint

---

[10]There is one cent difference between the amount of nonemployee compensation reported by Olin Ordnance in Form 1099 and the total amount that it paid to Mr. Palmer with respect to his approved monthly invoices 0008 through 0010. For convenience, we shall ignore that difference.

return (Schedule E), petitioners reported, inter alia, "Rents received" of $23,013 with respect to the Loomis residence. The $23,013 that petitioners reported in Schedule E as rent with respect to the Loomis residence included the $5,100 of Loomis residence monthly payments that Olin Ordnance reported in Form 1099 as part of the $52,894.31 of nonemployee compensation that it paid to Mr. Palmer during 1995 pursuant to paragraph 5 and Exhibit D of the Marion plant/Palmer consulting agreement.

In Schedule C, Profit or Loss From Business, of the joint return (Schedule C), petitioners reported in Part I, Income, gross receipts of $47,794, which was the amount ($52,894.31) of nonemployee compensation that Olin Ordnance paid to Mr. Palmer during 1995 and reported in Form 1099 reduced by the amount ($5,100) of Loomis residence monthly payments that petitioners claimed in Schedule E as rent with respect to the Loomis residence.

In the notice of deficiency (notice) issued to petitioners for the year at issue, respondent, inter alia, increased petitioners' Schedule C reported gross receipts by $95,935 because respondent determined that during 1995 Mr. Palmer had constructively received that amount of nonemployee compensation from Olin Ordnance.[11] Respondent also determined that the $5,100 of Loomis

---

[11]The $95,935 by which respondent increased petitioners' Schedule C gross receipts for the year at issue because respon-
(continued...)

residence monthly payments that petitioners claimed in Schedule E as rent with respect to the Loomis residence constitutes self-employment earnings and not rental income. Consequently, respondent increased petitioners' Schedule C gross receipts by an additional $5,100.

## OPINION

Petitioners bear the burden of proving that the determinations in the notice are erroneous. See Rule 142(a);[12] Welch v. Helvering, 290 U.S. 111, 115 (1933).

## Constructive Receipt Issue

Respondent determined in the notice that Mr. Palmer constructively received during 1995 $95,935 of nonemployee compensation from Olin Ordnance with respect to his approved monthly invoices 0011 through 0016 covering the period from February 6, 1995, to

---

[11](...continued)
dent determined that Mr. Palmer had constructively received that amount during 1995 equals the total of (1) the aggregate amount of nonemployee compensation that Olin Ordnance owed to Mr. Palmer during 1995 with respect to his approved monthly invoices 0011, 0012, 0013, 0014, 0015 and (2) the approximate portion of the amount of nonemployee compensation that Olin Ordnance owed to him during that year with respect to his approved monthly invoice 0016 covering the period from July 3, 1995, to the execution of the July 1995 amendment. For convenience, we shall ignore the fact that respondent approximated the portion of the amount of nonemployee compensation that Olin Ordnance owed to Mr. Palmer during 1995 with respect to his approved monthly invoice 0016 covering the period from July 3, 1995, to the execution of the July 1995 amendment.

[12]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code in effect for the year at issue.

the execution of the July 1995 amendment.  At trial and on brief, it is respondent's position that Mr. Palmer also constructively received during 1995 the amount of nonemployee compensation that Olin Ordnance owed to him with respect to his approved monthly invoices 0016 through 0020 covering the period from the execution of the July 1995 amendment to the end of 1995.  However, respondent does not seek an increased deficiency for 1995 with respect to that contention.  Petitioners counter that Mr. Palmer did not constructively receive during 1995 any amount of nonemployee compensation from Olin Ordnance.

Before turning to the constructive receipt issue before us, we shall summarize the principles of the doctrine of constructive receipt.  Section 1.451-2, Income Tax Regs., entitled "Constructive receipts of income", provides in pertinent part:

> (a) General rule.  Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given.  However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

The constructive-receipt doctrine requires a taxpayer who is on the cash method of accounting to recognize income when the taxpayer has an unqualified, vested right to receive immediate

payment of income.[13]  See <u>Ross v. Commissioner</u>, 169 F.2d 483, 490 (1st Cir. 1948), revg. and remanding on another issue a Memorandum Opinion of this Court; <u>Martin v. Commissioner</u>, 96 T.C. 814, 823 (1991); <u>Amend v. Commissioner</u>, 13 T.C. 178, 185 (1949).  Under that doctrine, a taxpayer may not deliberately turn his back on income otherwise available.  See <u>Martin v. Commissioner</u>, <u>supra</u> at 823; <u>Young Door Co., E. Div. v. Commissioner</u>, 40 T.C. 890, 894 (1963); <u>Basila v. Commissioner</u>, 36 T.C. 111, 116 (1961).  In order to trigger application of the constructive-receipt doctrine, there generally must be an amount that is due and owing which the obligor is ready, willing, and able to pay.  See <u>Childs v. Commissioner</u>, 103 T.C. 634, 654 (1994), affd. without published opinion 89 F.3d 856 (11th Cir. 1996).  If a taxpayer has an absolute and unconditional right to receive income in the year earned, the constructive-receipt doctrine requires the taxpayer to report such income for that year.  See <u>Childs v. Commissioner</u>, <u>supra</u> at 655; <u>Basila v. Commissioner</u>, <u>supra</u> at 115.

If a taxpayer has entered into a binding contract or agreement to defer income before it is due, the taxpayer is not required to report such income until it is actually received.  See <u>Oates v. Commissioner</u>, 18 T.C. 570 (1952), affd. 207 F.2d 711 (7th Cir. 1953).  Similarly, if the income under such a contract or

---

[13]Hereinafter, our discussion is limited to taxpayers, like petitioners, who are on the cash method of accounting and who therefore are subject to the constructive-receipt doctrine.

agreement is not yet due, a taxpayer may elect to defer that income further by entering into a superseding binding contract or agreement. See <u>Veit v. Commissioner</u>, 8 T.C. 809 (1947); <u>Kimbell v. Commissioner</u>, 41 B.T.A. 940 (1940).

In <u>Oliver v. United States</u>, 193 F. Supp. 930, 933 (E.D. Ark. 1961), the U.S. District Court summarized the foregoing principles of the constructive-receipt doctrine as follows:

> Where income, although not actually received, is unqualifiedly and without substantial limitation available to the taxpayer in a given year, and his failure actually to receive it is due to nothing other than his own volition, then such income is considered as having been constructively received during that year, and it must be so reported and the tax paid thereon. * * * But, if during the tax year in question the taxpayer has no right to receive income, or if his right to receive it is subject to substantial qualifications or restrictions, then he will not be deemed to have received such income constructively during that year. * * *
>
> When the item of income in question consists of the proceeds of a sale by the taxpayer of merchandise or other property * * * and where the sale is completed in a given year and the taxpayer at the time acquires an unconditioned vested right to receive the proceeds of the sale, and the buyer is ready, willing, and able to make payment, the taxpayer cannot avoid treating the proceeds as income for that year by voluntarily declining to accept payment during that year, or by requesting the purchaser not to pay him until a later year, or even by voluntarily putting himself under some legal disability or restriction with respect to payment. In such circumstances, he will be deemed in constructive receipt of the income notwithstanding his refusal to accept payment or his self-imposed restraints on payment. * * *
>
> On the other hand, it must be recognized that a taxpayer has a perfect legal right to stipulate that he is not to be paid until some subsequent year, or that the payments are to be spread out over a number of years. Where such a stipulation is entered into between

> buyer and seller prior to the time when the seller has
> acquired an absolute and unconditional right to receive
> payment, and where the stipulation amounts to a binding
> contract between the parties so that the buyer has a
> legal right to refuse payment except in accordance with
> the terms of the agreement, then the doctrine of con-
> structive receipt does not apply, and the taxpayer is
> not required to report the income until the same actu-
> ally is received by him. * * * [Citations omitted.]

We shall now address the constructive receipt issue presented in this case. In doing so, we bear in mind that the determination of whether a taxpayer has constructively received income is essentially a question of fact. See Martin v. Commissioner, supra at 822.

In support of their position, petitioners first contend that Mr. Palmer and Olin Ordnance orally modified the Marion plant/ Palmer consulting agreement as of September 12, 1994, the effective date of that agreement, before Mr. Palmer had a right to receive any nonemployee compensation under that agreement with respect to, inter alia, the period from February 6, 1995, to the execution of the July 1995 amendment. According to petitioners, the terms of that alleged oral modification are essentially the same as the terms of the July 1995 amendment, including the deletion of the last sentence of paragraph 6 of the Marion plant/ Palmer consulting agreement entitled "PAYMENT OF CONSULTING FEES" and the insertion in its place of the following sentences:

> Correct invoices submitted for payment to Mr. R.R.
> Harris for approval shall be paid within thirty (30)
> calendar days of the date of receipt, or deferred to a
> mutually agreed upon future date, but not later than

January 31, 1997.  In addition, Olin agrees to pay Consultant the equivalent of 5% annual simple interest on any deferred payments.

On the record before us, we find that petitioners have failed to establish that Mr. Palmer and Olin Ordnance orally modified the Marion plant/Palmer consulting agreement as of September 12, 1994, by agreeing to terms essentially the same as those appearing in the July 1995 amendment.  In fact, the record, including Mr. Palmer's own testimony, his March 22, 1995 memorandum to Mr. Harris and Mr. Picker, and his May 22, 1995 memorandum to Ms. Svarzkopf, establishes that Mr. Palmer and Olin Ordnance did not agree to such an oral modification as of September 12, 1994.

Mr. Palmer testified that he was having "continuing discussions" in March 1995 with Mr. Picker and Mr. Harris about an agreement to defer income.  Mr. Palmer's testimony shows that there was no modification, oral or written, of the Marion plant/Palmer consulting agreement in effect in March 1995, let alone on September 12, 1994.

Moreover, petitioners' March 22, 1995 memorandum to Mr. Harris and Mr. Picker stated in pertinent part:

This memo responds to your request that I identify the conditions under which I would agree to an extension of my present consulting contract thru January 1996. * * * I offer the following thoughts:

    *       *       *       *       *       *       *

2.    In addition, I would have the right to postpone receipt by me of payment for any monthly invoice to a future date of my choosing, but in any case not

later than January 31, 1997.  In such a case, I
would present my invoice and backup material month-
ly as incurred (as is done now) so that Olin could
perform the necessary audits upon submittal.  Olin
would then hold the payment until called for by me.
[Emphasis added.]

The language that Mr. Palmer used in his March 22, 1995 memorandum is consistent with an offer by him to enter into an agreement with Olin Ordnance under which he would agree to continued consulting work on certain terms and is inconsistent with petitioners' contention that when Mr. Palmer wrote his March 22, 1995 memorandum there was in effect a binding oral modification of the Marion plant/Palmer consulting agreement.

Mr. Palmer's May 22, 1995 memorandum to Ms. Svarzkopf also supports our finding that petitioners have failed to establish that Mr. Palmer and Olin Ordnance orally modified the Marion plant/Palmer consulting agreement as of September 12, 1994, and belies petitioners' contention to the contrary.  In the May 22, 1995 memorandum, Mr. Palmer requested that Olin Ordnance not issue payments for his approved invoices 0011, 0012, and 0013 covering the period from February 6 through April 30, 1995.  In making that request, Mr. Palmer stated in his May 22, 1995 memorandum: "Please phone me and we can discuss the agreement that I am working on with Cutler and Picker."  (Emphasis added.)  The foregoing language shows that no modification, oral or written, of the Marion plant/Palmer consulting agreement was in effect at the time Mr. Palmer sent his May 22, 1995 memorandum to Ms. Svarzkopf

and that Ms. Svarzkopf was unaware of any oral modification by Mr. Palmer and Olin Ordnance of paragraph 6 of the Marion plant/Palmer consulting agreement regarding the payment of consulting fees to Mr. Palmer. That is why on June 2, 1995, after she completed Olin Ordnance's invoice payment authorization process with respect to Mr. Palmer's approved monthly invoices 0011, 0012, and 0013 covering the period from February 6 through April 30, 1995, she sought guidance from Mr. Cutler. Mr. Cutler advised Ms. Svarzkopf to honor Mr. Palmer's request that Olin Ordnance not pay any of those invoices until Mr. Palmer directed Olin Ordnance to pay each such invoice. If, as petitioners contend, there had been an oral modification of the Marion plant/Palmer consulting agreement in effect on June 2, 1995, we believe that any such modification would have been communicated to Ms. Svarzkopf and that there would have been no need for Ms. Svarzkopf to seek guidance from Mr. Cutler.

Based on our examination of the entire record before us, we find that petitioners have failed to show that an oral modification of the last sentence of paragraph 6 of the Marion plant/Palmer consulting agreement was in effect on June 2, 1995, after Ms. Svarzkopf completed Olin Ordnance's invoice payment authorization process with respect to Mr. Palmer's approved monthly invoices 0011, 0012, and 0013 and approved those invoices and before she asked Mr. Cutler for guidance, so as to permit Mr. Palmer to

defer receipt of the nonemployee compensation that Olin Ordnance owed to him with respect to each of those invoices.[14]

On the present record, we further find that when Mr. Cutler advised Ms. Svarzkopf on June 2, 1995, to honor Mr. Palmer's request that Olin Ordnance not pay any of his approved monthly invoices 0011, 0012, and 0013 until Mr. Palmer directed Olin Ordnance to pay each such invoice, there was an oral modification (June 2, 1995 oral modification) by Mr. Palmer and Olin Ordnance of the last sentence of paragraph 6 of the Marion plant/Palmer consulting agreement entitled "PAYMENT OF CONSULTING FEES" to read as follows:

> Correct invoices submitted for payment to Mr. R.R. Harris for approval shall be paid within thirty (30) calendar days of the date of receipt or, at the direction of Consultant [Mr. Palmer], thereafter on a date selected by Consultant.

We also find on the record before us that, as of the time the June 2, 1995 oral modification was made, Mr. Palmer had an absolute and unconditional right to receive the amount of nonemployee compensation that Olin Ordnance owed to him with respect to each of his approved monthly invoices 0011 and 0012. That is because, as of that time, 30 days had expired from the respective dates (March 5, 1995, and April 15, 1995) on which Olin Ordnance first

---

[14]We further find on the instant record that petitioners have failed to establish that there was in effect on June 2, 1995, an oral modification of any other terms of the Marion plant/Palmer consulting agreement such as those appearing in the July 1995 amendment.

received those invoices, and both Mr. Harris and Ms. Svarzkopf had approved them.[15]  We further find on the record in this case that the June 2, 1995 oral modification was not made before the amount that Olin Ordnance owed to Mr. Palmer with respect to each of his approved monthly invoices 0011 and 0012 was due.

On the instant record, we also find that, as of the time the June 2, 1995 oral modification was made, Mr. Palmer did not have an absolute and unconditional right to receive the amount that Olin Ordnance owed to him with respect to his approved monthly invoice 0013 covering the period from April 3 through April 30, 1995.  That is because, as of that time, 30 days had not expired from the date (May 7, 1995) on which Olin Ordnance first received that invoice.  We further find on the present record that the June 2, 1995 oral modification was made before the amount that Olin Ordnance owed to Mr. Palmer with respect to his approved monthly invoice 0013 was due.  We thus must address whether the June 2, 1995 oral modification precludes application of the constructive-receipt doctrine with respect to the amount of nonemployee compensation that Olin Ordnance owed to Mr. Palmer with respect to his approved monthly invoice 0013.  We must address the same question with respect to the amount of nonemployee compensation that Olin Ordnance owed to Mr. Palmer with respect to each of his approved

---

[15]There was a minor change made to Mr. Palmer's monthly invoice 0012.

monthly invoices 0014 and 0015[16] covering the period from May 1 through July 2, 1995.[17]  That is because Mr. Palmer did not submit those invoices to Mr. Harris until after the June 2, 1995 oral modification was made, and Olin Ordnance's invoice review process and invoice payment authorization process had not been completed with respect to those invoices as of the time of that modification.  On the present record, we find that the June 2, 1995 oral modification was made before the amount that Olin Ordnance owed to Mr. Palmer with respect to each of his approved monthly invoices 0014 and 0015 was due.

In support of their position that the oral modification of the Marion plant/Palmer consulting agreement, which they contend was effective as of September 12, 1994, and which we have found was effective as of June 2, 1995, precludes application of the constructive-receipt doctrine, petitioners rely on Martin v. Commissioner, 96 T.C. 814 (1991), Robinson v. Commissioner, 44 T.C. 20 (1965), Oates v. Commissioner, 18 T.C. 570 (1952), affd. 207 F.2d 711 (7th Cir. 1953), Veit v. Commissioner, 8 T.C. 809 (1947), and Kimbell v. Commissioner, 41 B.T.A. 940 (1940).  We find all of those cases to be distinguishable from the instant case and petitioners' reliance on them to be misplaced.  In each

---

[16]See our discussion below with respect to Mr. Palmer's approved monthly invoice 0016 covering the period from July 3 through July 30, 1995.

[17]See supra note 2.

of the above-cited cases, there was a binding contract or agreement, or a superseding binding contract or agreement, to defer income before it was due.

With respect to each of Mr. Palmer's approved monthly invoices 0011 and 0012, we have found that the June 2, 1995 oral modification was not made before the amount of nonemployee compensation reflected in each such invoice that Olin Ordnance owed to him was due.

With respect to Mr. Palmer's approved monthly invoices 0013 through 0015, we have found that, as of the time the June 2, 1995 oral modification was made, Mr. Palmer did not have an absolute and unconditional right to receive the amount of nonemployee compensation reflected in each such invoice that Olin Ordnance owed to him. However, the cases on which petitioners rely are nonetheless distinguishable from the instant case with respect to those invoices. This Court and its predecessor, the Board of Tax Appeals, held that the binding contracts or agreements involved in the cases relied upon by petitioners were effective to preclude application of the constructive-receipt doctrine. In contrast, on the instant record, we find that the June 2, 1995 oral modification does not preclude application of the constructive-receipt doctrine to the aggregate amount of nonemployee compensation that Olin Ordnance owed to Mr. Palmer with respect to his approved monthly invoices 0013 through 0015. That is because we find on

that record that the June 2, 1995 oral modification did not impose a substantial limitation or restriction on Mr. Palmer's control of the receipt of the amount of nonemployee compensation that Olin Ordnance owed to him with respect to each of those invoices. At all times under the Marion plant/Palmer consulting agreement as modified by the June 2, 1995 oral modification, Olin Ordnance was ready, willing, and able to pay Mr. Palmer the amount that it owed to him with respect to each of his approved monthly invoices 0013, 0014, and 0015 within 30 days after Olin Ordnance first received each such invoice.[18] Pursuant to the June 2, 1995 oral modification, it was totally within Mr. Palmer's control whether Olin Ordnance paid each such amount to Mr. Palmer within 30 days after Olin Ordnance first received each such invoice or deferred its payment to him of each such amount until a date after that 30-day period. If Mr. Palmer wanted Olin Ordnance to defer such payment of the amount that Olin Ordnance owed to him with respect to each of his approved monthly invoices 0013, 0014, and 0015, all he had to do under the June 2, 1995 oral modification was to direct Olin Ordnance not to pay each such amount within 30 days after Olin Ordnance first received each such invoice. Mr. Palmer did just

---

[18]At all times prior to the time the June 2, 1995 oral modification of the Marion plant/Palmer consulting agreement was made, Olin Ordnance was ready, willing, and able to pay Mr. Palmer the amount that it owed to him with respect to his approved monthly invoices 0006 through 0012 within 30 days after Olin Ordnance first received each such invoice.

that, and consequently Olin Ordnance did not pay him the amount that it owed to him with respect to each such invoice until a date selected by Mr. Palmer.

Based on our examination of the entire record in this case, we find that petitioners have failed to establish that the June 2, 1995 oral modification of the Marion plant/Palmer consulting agreement precludes application of the constructive-receipt doctrine to the amounts of nonemployee compensation that Olin Ordnance owed to Mr. Palmer with respect to his approved monthly invoices 0011 through 0015.

In further support of their position that Mr. Palmer did not constructively receive during 1995 any amount of nonemployee compensation from Olin Ordnance, petitioners rely on paragraph 6 of the July 1995 amendment to the Marion plant/Palmer consulting agreement. Paragraph 6 of that amendment deleted the last sentence of paragraph 6 of the Marion plant/Palmer consulting agreement and inserted the following sentences in its place:

> Correct invoices submitted for payment to Mr. R.R. Harris for approval shall be paid within thirty (30) calendar days of the date of receipt, or deferred to a mutually agreed upon future date, but not later than January 31, 1997. In addition, Olin agrees to pay Consultant the equivalent of 5% annual simple interest on any deferred payments.

Petitioners maintain (1) that the July 1995 amendment was effective as of September 12, 1994, prior to the respective dates on which the amount of nonemployee compensation reflected in peti-

tioners' approved monthly invoices 0011 through 0016 covering the period from February 6, 1995, to the execution of the July 1995 amendment was due to Mr. Palmer, and (2) that paragraph 6 of the July 1995 amendment precludes application of the constructive-receipt doctrine to each such amount.

In support of their position regarding the July 1995 amendment, petitioners also rely on the same cases discussed above on which they rely to support their argument regarding the alleged oral modification of the Marion plant/Palmer consulting agreement. We find all of those cases to be distinguishable from the instant case and petitioners' reliance on them to be misplaced. As discussed above, in the cases on which petitioners rely, there was a binding contract or agreement, or a superseding binding contract or agreement, to defer income before it was due. In contrast, in the instant case, we find on the record before us that the July 1995 amendment was not effective retroactively to September 12, 1994. We further find on that record that paragraph 6 of the July 1995 amendment permitting Mr. Palmer to defer the amount of nonemployee compensation that Olin Ordnance owed to him was not effective before the amount of such compensation was due with respect to his approved monthly invoices 0011 through 0015.

With respect to Mr. Palmer's approved monthly invoice 0016 covering the period from July 3 through July 30, 1995, we find on the record presented that the July 1995 amendment applied to that

invoice. In making this finding, we rely heavily on the provision in the Marion plant/Palmer consulting agreement that the term of that agreement, which ended on June 30, 1995, could have been extended only by mutual agreement of Olin Ordnance and Mr. Palmer as set forth in a written document. We find that a written document, here the July 1995 amendment, was necessary in order to extend the Marion plant/Palmer consulting agreement beyond June 30, 1995. We further find that the July 1995 amendment was effective before the amount of nonemployee compensation reflected in Mr. Palmer's approved monthly invoice 0016 was due. That is because, as of July 1, 1995, 30 days had not expired from the date (July 31, 1995) on which Olin Ordnance first received that in-voice, and Olin Ordnance had not completed its invoice review process, and its invoice payment authorization process with respect to that invoice.

Although we have found that the July 1995 amendment applied to Mr. Palmer's approved monthly invoice 0016 before the amount of nonemployee compensation reflected therein was due, the cases on which petitioners rely do not require us to conclude that the constructive-receipt doctrine is inapplicable to the amount of such nonemployee compensation. Moreover, assuming arguendo that we had found that the July 1995 amendment was effective retroac-tively to September 12, 1994, and applied not only to Mr. Palmer's approved monthly invoice 0016 but also to his approved monthly

invoices 0011 through 0015, those cases do not require us to conclude that the constructive-receipt doctrine is inapplicable to the amount of nonemployee compensation reflected in each of those invoices 0011 through 0015. We reach these conclusions because the July 1995 amendment is distinguishable from the binding contracts or agreements involved in the cases on which petitioners rely. Unlike those binding contracts or agreements, we find on the record before us that paragraph 6 of the July 1995 amendment, like the June 2, 1995 oral modification of paragraph 6 of the Marion plant/Palmer consulting agreement, did not impose a substantial limitation or restriction on Mr. Palmer's control of the receipt of the amount of nonemployee compensation that Olin Ordnance owed to him with respect to each of his approved monthly invoices 0011 through 0016. Regardless of when the July 1995 amendment was effective, pursuant to paragraph 6 of that amendment, Olin Ordnance was ready, willing, and able to pay Mr. Palmer the amount that it owed to him with respect to each of his approved monthly invoices which was subject to the Marion plant/Palmer consulting agreement as modified by that amendment within 30 days after Olin Ordnance first received each such invoice. Pursuant to the July 1995 amendment, it was totally within Mr. Palmer's control whether Olin Ordnance paid each such amount to Mr. Palmer within 30 days after the date on which Olin Ordnance first received each such invoice or deferred its payment to him of

each such amount until a date after that 30-day period which was not later than January 31, 1997. If Mr. Palmer wanted Olin Ordnance to defer such payment of the amount that Olin Ordnance owed to him with respect to each of his approved monthly invoices that was subject to the July 1995 amendment, all he had to do under that amendment was to direct Olin Ordnance not to pay each such amount within 30 days after Olin Ordnance first received each such invoice. Mr. Palmer did just that, and consequently Olin Ordnance did not pay him the amount that it owed to him with respect to each such invoice until a date selected by Mr. Palmer which was not later than January 31, 1997.

Based on our examination of the entire record in this case, we find that petitioners have failed to show that the July 1995 amendment precludes application of the constructive-receipt doctrine to the respective amounts of nonemployee compensation reflected in Mr. Palmer's approved monthly invoices 0011 through 0016 covering the period from February 6, 1995, to the execution of that amendment. We further find on that record that Mr. Palmer constructively received during 1995 such amounts of compensation.[19] Consequently, we sustain respondent's determination in the notice to increase petitioners' Schedule C gross receipts for 1995 by

[19]We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit and/or irrelevant.

$95,935.[20]

Loomis Residence Monthly Payment Issue

Each of the two monthly payments that Mr. Palmer received in January 1995 and the one monthly payment that he received in February 1995 from Olin Ordnance with respect to his respective approved monthly invoices 0008, 0009, and 0010 included the $1,700 Loomis residence monthly payment. Petitioners reported in Schedule E as rent with respect to the Loomis residence the total of those three Loomis residence monthly payments ($5,100).[21] Respondent determined in the notice that the $5,100 of Loomis residence monthly payments that petitioners claimed in Schedule E as rent with respect to the Loomis residence constitutes self-employment earnings and not rental income and therefore increased petition-

---

[20]Since respondent does not seek an increased deficiency for 1995 attributable to the respective amounts that Olin Ordnance owed to Mr. Palmer with respect to his approved monthly invoices 0016 through 0020 covering the period from the execution of the July 1995 amendment until the end of 1995, we need not address whether Mr. Palmer constructively received during 1995 the aggregate amount of such compensation. Suffice it to say that our views with respect to the inefficacy of the July 1995 amendment to preclude application of the constructive-receipt doctrine to the respective amounts of nonemployee compensation that Olin Ordnance owed to Mr. Palmer with respect to his approved monthly invoices 0011 through 0016 covering the period from Feb. 6, 1995, to the execution of the July 1995 amendment apply with equal force to the respective amounts of nonemployee compensation that Olin Ordnance owed to Mr. Palmer with respect to those subsequent invoices.

[21]Olin Ordnance reported, inter alia, in Form 1099 the $5,100 of Loomis residence monthly payments as nonemployee compensation that it paid to Mr. Palmer during 1995.

ers' Schedule C gross receipts for 1995 by an additional $5,100. Petitioners dispute that determination.

In support of their joint return position with respect to the $5,100 of Loomis residence monthly payments, petitioners contend, inter alia: "As the funds from Olin were conditional on the rental of Petitioners' home and the amount of those funds were [sic] determined by the amount of rent the tenant paid, the funds should be characterized as rental income."

On the record before us, we reject petitioners' contention. The fact that the Loomis residence monthly payment was agreed to in the Marion plant/Palmer consulting agreement because petitioners were renting their Loomis residence while Mr. Palmer was consulting at the Marion plant does not require us to accept petitioners' contention that the Loomis residence monthly payments in question constitute rent. Nor does the fact that the amount of the Loomis residence monthly payment was determined as the approximate difference between (1) the monthly rent that petitioners were to receive on their Loomis residence throughout the period during which Mr. Palmer was consulting at the Marion plant and (2) the total amount of monthly mortgage, insurance, and maintenance expenses that they were to pay on that residence throughout that period require us to accept that contention.

In order to resolve the question presented with respect to the $5,100 of Loomis residence monthly payments in question, we

must determine the nature of those payments.  The record discloses that Mr. Palmer required Olin Ordnance to pay him the Loomis residence monthly payment as a condition to his accepting a consulting position at its Marion plant.  The record also establishes that at no time did Olin Ordnance receive a leasehold or any other interest in the Loomis residence in exchange for the Loomis residence monthly payments.  Finally, the Marion plant/Palmer consulting agreement, as well as the July 1995 amendment to that agreement, included the requirement that Olin Ordnance pay Mr. Palmer the Loomis residence monthly payment in paragraph 5 entitled "CONSULTING FEES".

Based on our examination of the entire record in this case, we find that the $5,100 of Loomis residence monthly payments that Mr. Palmer received during 1995 from Olin Ordnance constitutes nonemployee compensation to Mr. Palmer for that year.[22]  Consequently, we sustain respondent's determination to increase petitioners' Schedule C gross receipts for 1995 by an additional $5,100.

To reflect the foregoing and the concessions of petitioners,

<u>Decision will be entered for respondent</u>.

---

[22]We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit.